UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF TEXAS
BROWNSVILLE DIVISION

**NORMA ALEJANDRA LOPEZ, Petitioner** )
)
v. ) C.A. No. B-04-089
)
**HON. COLIN POWELL, et al, Respondents.** )

**PLAINTIFF'S MOTION FOR SUMMARY JUDGMENT**

Petitioner/Plaintiff Norma Alejandra Lopez, through counsel, and pursuant to Rule 56, Fed. Rules Civ. Proc., respectfully files the instant motion for summary judgment. In support thereof, she incorporates herein Exhibits A through G, presently on file, and the Exhibits H through N, which are being filed simultaneously. These Exhibits consist of following:

A: Letter denying passport
B: Plaintiff's short form Birth Certificate
C: From Plaintiff's file, called "Documented False Claim"
D: State Department file relating to Plaintiff
E: Defendants' Answers to Plaintiff's Written Discovery
F: Defendants' Response to Plaintiff's Second Set of Requests for Production of Documents
G: Plaintiff's Response to Defendants' First Set of Interrogatories
H: Texas and Mexican birth certificates of Plaintiff's older brother, Noe Alejandro Lopez, born September 26, 1982
I: Deposition of Plaintiff's mother, Norma Alicia Anaya de Lopez
J: Deposition of Plaintiff's father, Dr. Juan Noe Lopez-Soto
K: The local crossing cards of Plaintiff's parents
L: The documents submitted by Plaintiff in response to Defendant's Request for Production of Documents
M: Copy of I-94, "Temporary Evidence of Lawful Admission for Permanent Residence," issued to Norma Anaya de Lopez on April 14, 2005, as IR-0, (parent of adult United States Citizen)
N: Defendants' First Supplemental Answers to Plaintiff's Written Discovery
O: (Sealed) documents from the file of the midwife, and
P: Declaration Under Penalty of Perjury of Nelda Alicia Anaya.

Also on file in support of the instant action is the affidavit of the proposed expert witness, Joe Rivera, filed August 16, 2005.

## I. THE FACTS

Plaintiff submits that there is no genuine issue of material fact with respect to her claim of birth in San Juan, Texas, on May 18, 1989. In support of her claim, she has presented her Texas birth certificate, filed May 19, 1989, (Exh. E, pp. 20,23); the depositions of her parents, both of whom were present at her birth, (Exhibits I and J); and her vaccination record, (Exhibit L, p. 11). She has also presented a wealth of circumstantial evidence, including copies of the local crossing cards they held at the time of Plaintiff's birth, (Exh. K), the fact that her older brother, Noe Alejandro Lopez, was born September 26, 1982, in Brownsville, Texas, also with the assistance of a midwife, one Trinidad A. Saldivar. His birth was also contemporaneously registered in Brownsville, Texas, on October 1, 1982, (Plaintiff's Exhibits H, I, and J). Like the Plaintiff herein, his birth was later registered in Mexico on November 17, 1982, (Plaintiff's Exh. H, p.4).

The sole difference between the cases of Noe Alejandro Lopez, and the Plaintiff herein, is that he was born with the aid of a midwife who has *not* been accused of filing false birth registrations. Therefore, his U.S. citizenship was not challenged by Respondents, and through him, his mother was granted lawful permanent resident status on April 14, 2005, (Plaintiff's Exhs. I, p. 11 and M).

## II. FACTUAL ARGUMENT

### A. THE SOLE REASON GIVEN BY THE STATE DEPARTMENT FOR DENYING PLAINTIFF'S PASSPORT APPLICATION WAS PATENTLY INCORRECT

The State Department denied Plaintiff's application for a United States passport on the basis of the following assertion, (Exh. A):

> During the adjudication of your application it came to our attention that Ms. Barrera, the individual who filed the birth certificate, gave a sworn statement on December 6, 1991, to the Bureau of Citizenship and Naturalization Service (formerly known as the Immigration and Naturalization Service) admitting that she had falsely filed the Texas birth certificate.

This assertion is incorrect. No such statement exists. The claim was apparently based on a document found in Plaintiff's "A-file," dated December 6, 1991, captioned "Documented False Claim to Citizenship." (Exh. D, p.10). Far from constituting such a sworn statement, or even corroborating the *existence* of such a statement, the narrative in this document confirms that no such statement, sworn or otherwise, was ever made. *See, id.* (emphasis added):

> Midwife Sylvia BARRERA-Sanchez falsely registered hundreds of foreign born children as U.S. born. She has now been convicted. In this particular case the Mexican birth occurred on the same date as the U.S. birth. Both parents are from Mexico. *BARRERA has refused to cooperate and disclose which of her filings are false.* It is suspected that most were.

That the midwife never asserted that Plaintiff's birth was falsely registered as having occurred in San Juan can also be seen from (sealed) Exhibit O, consisting of documents from her A-file. Included are the notes of the INS investigator, Gilberto Trevino, involved in the case. They show that the midwife was given immunity with respect to any children falsely registered prior to October 30, 1990, that she gave the names of two such children, *not* including the Plaintiff, as having been falsely registered. It also shows that she reported that her records had been stolen and was unable to identify other cases without access to her records.

This fact is also indirectly corroborated by Plaintiff's Exh. E, p. 3, Defendants' Response to Plaintiff's Interrogatory No. 1; and pp. 6-13, where the Government responds to virtually all of Plaintiff's pertinent requests for admission with largely frivolous objections to relevancy, and/or to the effect that the request is misleading in that it implies that the burden of proof is on the government, rather than on Plaintiff. In particular, the Government responded to Request No. 13, (Exh. E, pp. 9-10) as follows: [1]

---

[1] In their "supplemental" responses, (Plaintiff's Exhibit N), Defendants continued to "object" to the pertinent requests for

> REQUEST FOR ADMISSION NO. 13:
> Admit that, apart from her Mexican birth certificate, the Government still has no documentary, testimonial, or other direct evidence that Petitioner was born in Mexico.
>
> RESPONSE:
> Defendant objects to this request for admission, as it misleadingly suggests that the burden is on Defendant to demonstrate that Plaintiff was not born in the United States, when in fact the burden is on Plaintiff to demonstrate that she was born in the United States.

Clearly, no such evidence exists. Otherwise, Defendants would not need to hide behind generalities regarding the burden of proof.

### B. THE FACT THAT PLAINTIFF WAS REGISTERED IN MEXICO, LONG AFTER HER REGISTRATION IN TEXAS, IS NOT EVIDENCE THAT THE TEXAS REGISTRATION WAS FALSE.

It neither uncommon, nor "suspicious," for the parents of children born in the Rio Grande Valley, Texas, to also register them in Mexico, particularly if it is anticipated that the children will be raised in Mexico. This is particularly true where the Texas registration preceded registration in Mexico. In part, this is common sense, but Plaintiff would also call to the attention of the Court the Affidavit of Plaintiff's Expert Witness, Jose Rivera, who has been the County Clerk of Cameron County for over 27 years. In his affidavit, (submitted August 16, 2005), Mr. Rivera states:

> ... I am aware that at one time it was common to find that local midwifes "parteras" were fraudulently registering children as having been born in the United States when in fact they were born in Mexico. However, I am also aware that it is a common practice in Cameron County and other border counties for the parents of children who were born and registered in the United States to then go ahead an register them in Mexico as having been born in Mexico. The reasons for registering them in Mexico are many. Some of them do it because they want their children to have the benefits of being Mexican and other[s] do it so that the children can go to school in Mexico. I have seen them incorrectly register them as having been born in Mexico, when in fact they were born in the United States, regardless of whether the child was

---

essentially the same reasons.

> born with a "partera" or at a hospital. Also, many delayed birth registrations have been flagged by the State because Austin has submitted a ltter stating that a birth registration was also found in Mexico. It is my opinion that a birth first occurs in Mexico, then a a delayed process of birth is submitted to be filed. Most of these births (on delayed records) were delivered by a midwife.
>
> Therefore, my experience is that the fact that a person was also registered in Mexico does not mean that he or she was not born in the United States. However, my experience is that most parents who fraudulently registered their children as having been born in the United States did so after they first registered their child in Mexico. In other words, in most cases where there is a fraudulent birth records, you will also find that the child was also registered in Mexico, however, that child was registered first in Mexico and then in the United States.

Here, it is undisputed that Plaintiff's birth was registered first in Texas. In fact, she was registered in Texas on May 19, 1989, the day after her birth, (Exh. E, pp. 20, 23), and in Mexico, on June 26, 1989, some six weeks later, (Exh. E, p. 17-18).

Both parents had valid crossing cards, which were issued in the 1970s. They held until they were exchanged for laser visas in 2001, which visas were, in turn given to INS as part of the process of adjusting their status, and in return for which, they received "advance parole" documents, allowing them to continue coming and going between Mexico and the United States. (Exh. K; Exh. J, pp.5, 10,18; Exh I, p.6). Both have explained their reasons for arranging to have the Plaintiff, and her older brother, born in Texas. On their way to San Juan, the morning Plaintiff was born, they stopped at the home of Mrs. Lopez' sister-in-law, Nelda Alicia Anaya, ("Mrs. Anaya"), in McAllen, Texas, to leave their son while the new baby was being born. (Exhs. I, p. 10; J, p. 12; and P, p.2). Mrs. Anaya recalls that Mrs. Lopez had told her that they had arranged for the baby to be born with a midwife in Texas, that she saw Mrs. Lopez, who was in labor, the morning of Plaintiff's birth, and again that afternoon, with the new baby. And when confronted about

the problem with the passport, the midwife confirmed, to Mrs. Lopez and Mrs. Anaya, that she had actually delivered the Plaintiff, as shown by her Texas birth certificate. (Exhs. I, p. 7, and P, p.2).

### C. THE FACT THAT PLAINTIFF'S PARENTS HAD THE MISFORTUNE OF CHOOSING A MIDWIFE WHO HAD PREVIOUSLY BEEN CONVICTED OF FILING FALSE TEXAS BIRTH CERTIFICATES TO AID IN THE BIRTH OF THEIR SECOND CHILD TO BE BORN IN TEXAS IS NOT PROOF THAT SHE WAS NOT BORN HERE, PARTICULARLY WHERE THE OVERWHELMING WEIGHT OF THE EVIDENCE SHOWS BIRTH IN TEXAS.

Dr. and Mrs. Lopez arranged to have their children born in the United States in order to give them better opportunities. (Exh. J, pp. 5,13). They did so with their son, in 1982, and several years later, with their daughter, the Plaintiff. They also registered both children in Mexico, in part from "ignorance," and in part, to give them "more guarantees in Mexico," *id.,* including the ability for them "to study the first years in Mexico," (Exh. J, p.16).

Prior to the birth of Plaintiff's older brother, Noe, her father had been studying medicine in Matamoros. By the time of his birth, their father was a licensed physician. (Exh. J, pp.4,7). He chose to have a midwife deliver him because, as a doctor, he "wanted to be present at the delivery, to be able, in case it was needed, to help." (Exh. J, p.6). As a recent medical graduate, finances were also a consideration. (Exh. I, p.10).

By the time of the Plaintiff's birth, Dr. Lopez was well established in Mexico, (Exh. J, p.9-10). He still chose to have her delivered by a midwife, because he, his wife, and son, had all entered the world with the aid of a midwife. (Exh. J, p. 13). He chose to have her born in Texas to "give her more guarantees for her to live in a county that [he admires]." *Id.* It was through a midwife in Mexico, "Dona Chole," that he learned of Sylvia Barrera. (Exh. J, pp.10-11). He and his wife visited her once before the birth, to arrange for her services, but did not see her again until the day of the birth. (Exh. J, p.11). When the labor pains began, Dr. Lopez checked his wife, and then drove her to San Juan, to the

home of the midwife. *Id.*. On the way, they left their son, Noe, with Dr. Lopez' sister-in-law, Nelda Anaya, (Exhs. I, p. 10; J, p. 12; and P, p.2). After the birth, they returned home to Reynosa.

Although Dr. Lopez was a licensed physician, in Mexico, when both his children were born, he did not (and does not) have a Texas license to practice medicine. Although he thought that it would be improper to deliver his daughter himself, he replied in the affirmative to the question of whether he had "the knowledge and ability to deliver babies," (Exh. J, p.13). As he elaborated, *id.*:

> Yes, of course: I'm a medical doctor, a surgeon, a midwife. And the idea was that in case there was a complication, there was the hospital. [Then I could take her to the hospital].

When asked why he did not take his wife to a hospital in the first place, he responded, *id.*:

> Because of ignorance and ... if the same situation presented today, I would take her to the hosptial. But as I said – It was – my son was born through a midwife. I'm going to be present in case there's any problems. There should be no problems.

And in fact, there were no problems. As had occurred with their son, the Plaintiff's birth was fast, and easy. (Exh. I, p.6).

### III. LEGAL STANDARDS

As reiterated in *Reeves v. Sanderson Plumbing Prods., Inc.*, 530 U.S. 133, 150 (2000), the standards for determining motions for judgment as a matter of law, and for summary judgment, are the same. In both cases, the court must review the record "taken as a whole." Such a motion must be granted if there is "no 'legally sufficient evidentiary basis' for a reasonable jury" to find in favor of the non-moving party. *Mota v. Univ. of Tex. Houston Health Sci. Ctr.*, 261 F.3d 512, 519 (5th Cir. 2001). As further explained in *Lechuga v. Southern Pacific Transp. Co.*, 949 F.2d 790, 794 (5th Cir. 1992):

> This court reviews the grant of summary judgment motion

> de novo, using the same criteria used by the district court in the first instance. ... We "review the evidence and inferences to be drawn therefrom in the light most favorable to the non-moving party." ... Summary judgment is proper "if the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to a judgment as a matter of law."  ... Fed.R.Civ.P. 56(e) requires that when a proper motion for summary judgment is made, the non-moving party must set forth specific facts showing that there is a genuine issue for trial.  The mere existence of an alleged factual dispute between the parties will not defeat an otherwise properly supported motion for summary judgment. A dispute about a material fact is genuine "if the evidence is such that a reasonable jury could return a verdict for the nonmoving party."

In the case at bar, the evidence is far from sufficient for any reasonable factfinder to find for the non-moving party. In fact, the *only* such evidence is the fact that the midwife in question falsely registered *other* babies. Given the overwhelming evidence that Ms. Lopez was *not* one of these children, and the uncontroverted fact that the alleged sworn statement which formed the basis of the State Department's rejection of Ms. Lopez' claim *does not exist*, it is submitted that no reasonable factfinder could conclude, based on the record as a whole, that Ms. Lopez was not born in San Juan, Texas, on May 18, 1989, as she claims.

Respectfully Submitted,

s/
Lisa S. Brodyaga
Attorney at Law
17891 Landrum Park Road                 Federal Id:  1178
San Benito, TX 78586                    Texas State Bar: 03052800
(956) 421-3226
(956) 421-3423 (fax)

CERTIFICATE OF SERVICE

I certify that a copy of the foregoing, with proposed Order, were electronically served on Rene Benavides, AUSA, on March 30, 2006.

s/ Lisa S. Brodyaga
_____