UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF TEXAS
BROWNSVILLE DIVISION

| | | |
|---|---|---|
| NORMA ALEJANDRA LOPEZ | ) | |
|     PETITIONER, a minor, by and through | ) | |
|     Her Mother, | ) | |
| NORMA ALICIA ANAYA DE LOPEZ, | ) | |
| | ) | |
| v. | ) | C.A. B-04-089 |
| | ) | |
| CONDOLEZZA RICE, | ) | |
|     United States Secretary of State. | ) | |
|         and | ) | |
| UNITED STATES OF AMERICA, | ) | |
|     RESPONDENTS. | ) | |
| _____ | ) | |

EXHIBIT "L" IN SUPPORT OF
PETITIONER'S MOTION FOR SUMMARY JUDGMENT

Norma Lopez, through counsel, herewith submits Exhibit "L," to wit, copies of the documents produced by her in response to the request for production of documents filed by Respondents herein.

Respectfully Submitted,


s/
Lisa S. Brodyaga                          (956) 421-3226
Attorney at Law                           (956) 421-3423 (fax)
17891 Landrum Park Road                   Federal Id:  1178
San Benito, TX 78586                      Texas State Bar: 03052800

CERTIFICATE OF SERVICE

I certify that the foregoing was electronically served on Rene Benavides, AUSA, on March 30, 2006.


s/
_____

**UNITED STATES DISTRICT COURT**
**FOR THE SOUTHERN DISTRICT OF TEXAS**
**BROWNSVILLE DIVISION**

| | |
|---|---|
| NORMA ALEJANDRA LOPEZ )<br>    PETITIONER, a minor, by and through )<br>    Her Mother, )<br>NORMA ALICIA ANAYA DE LOPEZ, )<br> )<br>**v.** )<br> )<br>HON. CONCOLEZZA RICE, )<br>    United States Secretary of State. )<br>       and )<br>UNITED STATES OF AMERICA, )<br>    RESPONDENTS. )<br>_____) | **C.A. B-04-089** |

**PETITIONER/PLAINTIFF'S RESPONSE TO**
**FIRST SET OF REQUESTS FOR PRODUCTION OF DOCUMENTS**

Norma Alejandra Lopez, ("Petitioner"), through her mother, Norma Alicia Anaya, ("Ms. Anaya"), herewith produce the following documents, in accordance with Rule 34, Fed. Rules of Civil Proc..

1.  A certified copy of any Mexican birth certificate for Norma Alejandra Lopez, here father and her mother.

Appended hereto are copies of said certified copies. The original certified copies are in the possession of Plaintiff's attorney, and may be examined, and further copies made, on request.

2.  (No number 2)

3.  All documentary evidence of pre-natal care of plaintiff's mother by Sylvia Barrera and of plaintiff's delivery by Sylvia Barrera.

Plaintiff has no such documents in her possession, custody or control.

4.  All documentary evidence of post-natal care, including immunizations, provided to plaintiff Norma Alehandra Lopez during the first year after birth, including all medical records of that care by medical doctors, nurses, midwives, other medical professionals, clinics, hospitals or other medical facilities showing the dates and purposes of such care.

The only documents in Plaintiff's possession, custody or control which are responsive to this request is the Personal Immunization Record, provided by the Hidalgo County Health Dept., on August 29, 2005. The original vaccination record has been lost. Plaintiff has no other such documents in her possession, custody or control.

Appended hereto is a copy of said document. The original is in the possession of Plaintiff's attorney, and may be examined, and further copies made, on request. Also attached, although it is not exactly that which is requested, are copies of the diploma of Plaintiff's father, showing that he was given the degree of "Medico Cirujano" on August 23, 1980. Also attached is evidence that he was attending births in Mexico, at least as early as 1982.

5.    All documentary evidence, including bills such as for transportation, rent, medical care, utilities and telephone, as well as income tax statements that plaintiff Norma Alejandra Lopez' mother and/or father were physically present in San Juan, Texas at the time of plaintiff Norma Alejandra Lopez' birth.

Plaintiff has no such documents in her possession, custody or control. Records showing the entry and departure of Plaintiff's parents' car on the day of her birth would be accessible to Defendants, not to Plaintiff.

6.    Documentary evidence of plaintiff's parents' places of residence from January 1980 to the present.

Attached are the following:

A.    Copies of documents relating to purchase of home at Calle 9, #240, Col. Las Fuentes, Reynosa, Mexico, where her parents resided from 1982 to 2003. Said document shows their address at time of purchase as Calle 3, between Rio Alamo and Purificacion, Col Prolongacion Longoria, also in Reynosa, Mexico.

B.    Copies of four rent receipts from the apartment Plaintiff's parents rented at 816 II-C Galveston Ave, McAllen, Texas. [1]

---

[1]    Plaintiff no longer has the original receipt, and the book of the landlady is not in her possession, custody, or control. The landlady was, however, kind enough to provide copies of the first and last month's rent receipt, as "bookends" for the time the apartment was rented to Plaintiff's mother.

2

C.  Copies of lease contract and rent receipt, dated July 20, 2004, in their son's name, for the apartment at 3807 Plantation Blvd, in Mission, Texas.

D.  A copy of the lease contract in the name of Norma Alicia Anaya de Lopez, dated January 1, 2005, also for the apartment at 3807 Plantation Blvd, in Mission, Texas, and most recent rent receipt for that apartment, dated September 1, 2005.

Appended hereto are copies of said documents.  Except for the receipts from the Galveston Ave. apartment, (which are in the possession of the landlady), the originals are in the possession of Plaintiff's attorney, and may be examined, and further copies made, on request.

7.  All documentary evidence that plaintiff has attended school in McAllen, Texas.

Attached are copies of most of Plaintiffs' report cards, (a few have been misplaced), diplomas, awards, and a current school ID.

8.  All documentary evidence that plaintiff is a resident of McAllen, Texas.

As a minor, the best evidence Plaintiff has that she is a resident of McAllen, Texas are the lease contract in her mother's name, and her school ID.

Respectfully Submitted,

Lisa S. Brodyaga                        (956) 421-3226
Attorney at Law                          (956) 421-3423 (fax)
17891 Landrum Park Road           Federal Id:  1178
San Benito, TX 78586                   Texas State Bar: 03052800
September 12, 2005

3

# ESTADOS UNIDOS MEXICANOS
## GOBIERNO DEL ESTADO DE TAMAULIPAS
### REGISTRO CIVIL



SEADRC-01-A
No. DE CONTROL
FOLIO **1590589**

ESTADO LIBRE Y SOBERANO DE TAMAULIPAS Y COMO OFICIAL
CIVIL EN S. JIMENEZ TAM. CERTIFICO QUE EN EL LIBRO No UNO DEL AÑO DEL 1959
GENERAL DEL REGISTRO CIVIL EN LA FOJA 065 SE ENCUENTRA ASENTADA EL ACTA
LEVANTADA POR EL C. OFICIAL C. J. RAMIRO CANTU SALDIVAR
CIVIL RESIDENTE EN SANTANDER JIMENEZ T. TAM II
FECHA DE INSCRIPCION 7 FEBRERO 1959
DIA          MES          AÑO

LIC. REYNALDO JAVIER GARZA
ELIZONDO
NOTARIO PUBLICO NUM. 266
REYNOSA, TAM.

## ACTA DE NACIMIENTO

NOMBRE **NORMA ALICIA ANAYA CABALLERO**
FECHA DE NACIMIENTO 7 DE FEBRERO DE 1959     HORA: 5:00
LUGAR DE NACIMIENTO S. JIMENEZ, TAM.
No. DE CERTIFICADO DE NACIMIENTO _ _ _ _ _ _ _ _ _ _   C.R.I.P. _ _ _ _ _ _ _

PRESENTADO          VIVO X          MUERTO          SEXO.   MASCULINO          FEMENINO  X

COMPARECIO:   EL PADRE X     LA MADRE     AMBOS     PERSONA DISTINTA     REGISTRADO

### PADRES

NOMBRE   **MARIO ANAYA**
NACIONALIDAD   MEXICANA          FECHA DE NACIMIENTO _ _ _ _ _ _
NOMBRE   ORALIA CABALLERO
NACIONALIDAD   MEXICANA          FECHA DE NACIMIENTO _ _ _ _ _ _

### ABUELOS PATERNOS

ABUELO   DOMINGO ANAYA          NACIONALIDAD _ _ _ _ _
ABUELA   GUDELIA ANAYA          NACIONALIDAD _ _ _ _ _

### ABUELOS MATERNOS

ABUELO   LEANDRO CABALLERO          NACIONALIDAD _ _ _ _ _
ABUELA   MA. JUANA CABALLERO          NACIONALIDAD _ _ _ _ _

### TESTIGOS

NOMBRE   JOSE DELGADO V.          EDAD   48   AÑOS
NACIONALIDAD
NOMBRE   SILVERIO BUJANOS          EDAD   26   AÑOS
NACIONALIDAD

### PERSONA DISTINTA DE LOS PADRES QUE PRESENTA AL REGISTRADO

NOMBRE
PARENTESCO          EDAD          AÑO

SE EXPIENDE ESTA COPIA EN CUMPLIMIENTO DEL ARTICULO
CODIGO CIVIL CERTIFICO LEGO EN LA CIUDAD DE
DEL ESTADO DE TAMAULIPAS HOY 18 DIAS DEL MES DE
OCTUBRE DEL 2000 DOY FE



C. ZOILA ALCALA GUZMAN.
_ _ _ _ _ _ _ _ _ _ _
NOMBRE          FIRMA

OFICIALIA DEL REGISTRO CIVIL
S. JIMENEZ, TAM.

El suscrito LIC. JORGE VALERIANO MEZA CHAPA, Adscrito
en funciones a la Notaría Pública Número 266
(DOSCIENTOS SESENTA Y SEIS), con ejercicio en esta
Ciudad, CERTIFICA: Que la anterior Copia 706567 KCes
fiel y exacta de Original, la cual doy fé haber tenido a la vista
y la que cotejada devolví a su Presentante, va en ( 01 )
Foja(s) útil(es). Extiendo esta Certificación con mi Sello y Firma
en Reynosa, Tamaulipas., a las 09:10 Hrs. del día 06 del mes
de __SEPTIEMBRE__ del 2005. Quedando Registrada esta
Certificación bajo el numero 12.979 del Libro VI
de Control. certificaciones y verificaciones fuera de protocolo
DOY FE.

LIC. JORGE VALERIANO MEZA CHAPA
Adscrito en Funciones a la
Notaría Pública Número 266



LIC. REYNALDO JAVIER GARZA
ELIZONDO
NOTARIO PUBLICO NUM. 266
REYNOSA, TAM.

EN NOMBRE DEL ESTADO LIBRE Y SOBERANO DE TAMAULIPAS Y COMO OFICIAL DEL REGISTRO CIVIL CERTIFICO QUE EN EL ARCHIVO DEL REGISTRO CIVIL EN REYNOSA SE ENCUENTRA ASENTADA UN ACTA LEVANTADA POR EL C. OFICIAL FRANCISCO GONZALEZ B. QUE CONTIENE LOS SIGUIENTES DATOS :

# ACTA DE NACIMIENTO

LIBRO No. 7          ACTA No. 1285     CURP : = = = = =          CRIP : = = = = =

FECHA DE REGISTRO : 26/04/1956                    LUGAR DEL REGISTRO : REYNOSA, TAMAULIPAS

REYNALDO JAVIER GARZA ELIZONDO
NOTARIO PUBLICO NUM. 20 JUAN NOE LOPEZ SOTO                              SEXO : MASCULINO
REYNOSA, TEXAS     FECHA DE NACIMIENTO : 27/02/1956                     HORA DE NACIMIENTO : 18:00
         LUGAR DE NACIMIENTO : RIO BRAVO . TAMPS. .
CERTIFICADO NACIMIENTO : = = = = =           COMPARECIO : MADRE        PRESENTADO : VIVO

NOMBRE DEL PADRE : ANTONIO LOPEZ                              NACIONALIDAD : MEXICANA
DOMICILIO HABITUAL : = = = = = = = = =                               EDAD : 23 AÑOS

NOMBRE DE LA MADRE : NOEMI SOTO                               NACIONALIDAD : MEXICANA
DOMICILIO HABITUAL : = = = = = = = = =                               EDAD : 20 AÑOS

ABUELO PATERNO : MAXIMO LOPEZ              NACIONALIDAD : = = = = =
ABUELA PATERNA : FRANCISCA ARZOLA          NACIONALIDAD : = = = = =
ABUELO MATERNO : ANTONIO SOTO              NACIONALIDAD : = = = = =
ABUELA MATERNA : ORALIA RAMOS              NACIONALIDAD : = = = = =

TESTIGO : JESUS AYALA                EDAD : 44 AÑOS    NACIONALIDAD : = = = = =
TESTIGO : ALFREDO TREVIÑO            EDAD : 36 AÑOS    NACIONALIDAD : = = = = =

PERSONA DISTINTA DE LOS PADRES QUE PRESENTA AL REGISTRADO :
NOMBRE : = = = = = = = = = =                      EDAD : = =    NACIONALIDAD : = = = = =
DOMICILIO : = = = = = = = = = =                                PARENTESCO : = = = = =

SE EXTIENDE ESTA CERTIFICACION, EN CUMPLIMIENTO DEL ARTICULO 31 DEL CODIGO CIVIL VIGENTE DEL ESTADO DE TAMAULIPAS, EN REYNOSA A LOS 22 DIAS DEL MES DE OCTUBRE DEL 2003. DOY FE.

SELLO DEL
REGISTRO CIVIL

Gobierno del Estado de Tamaulipas
Secretaria General de Gobierno
OFICIALIA 2c DE REYNOSA

LITHA DEL CARMEN GARZA PEÑA
OFICIAL 2o. DEL REGISTRO CIVIL

0134950

22/10-33 L - ASG 1 - REG
VILSA

El suscrito LIC. JORGE VALERIANO MEZA CHAPA, Adscrito
en funciones a la Notaría Pública Número 266
(DOSCIENTOS SESENTA Y SEIS), con ejercicio en esta
Ciudad, CERTIFICA: Que la anterior Copia $\overline{\text{Fotostatica}}$ es
fiel y exacta de Original, la cual doy fé haber tenido a la vista
y la que cotejada devolví a su Presentante, va en ( 01 )
Foja(s) útil(es). Extiendo esta Certificación con mi Sello y Firma
en Reynosa, Tamaulipas, a las 09:00 Hrs. del día 06 del mes
de SEPTIEMBRE del 2005. Quedando Registrada esta
Certificación bajo el numero 12,972 del Libro VI
de Control. certificaciones y verificaciones fuera de protocolo
DOY FE.

### LIC. JORGE VALERIANO MEZA CHAPA
#### Adscrito en Funciones a la
#### Notaría Pública Número 266



LIC. REYNALDO JAVIER GARZA
ELIZONDO
NOTARIO PUBLICO NUM. 266
REYNOSA, TAM.

EN NOMBRE DEL ESTADO LIBRE Y SOBERANO DE TAMAULIPAS Y COMO DIRECTORA
DEL REGISTRO CIVIL EN EL ESTADO CERTIFICO QUE EN EL ARCHIVO DEL REGISTRO
CIVIL EN CIUDAD VICTORIA SE ENCUENTRA ASENTADA UN ACTA LEVANTADA POR EL
OFICIAL ROSALBA TERAN DE ROBINSON QUE CONTIENE LOS SIGUIENTES DATOS :

# ACTA DE NACIMIENTO

LIBRO No. **8**            ACTA No. **1555**          CRIP : **280320189015555**

FECHA DE REGISTRO : **26/06/1989**

LUGAR DEL REGISTRO :   **REYNOSA, TAMAULIPAS**

NOMBRE :                                                                SEXO :

**NORMA ALEJANDRA LOPEZ ANAYA**                                          **FEMENINO**

FECHA DE NACIMIENTO :     HORA DE NACIMIENTO :      COMPARECIO :       PRESENTADO :

**18/05/1989**               **12:00**                **MADRE**           **VIVO**

LUGAR DE NACIMIENTO :

**. REYNOSA, TAMAULIPAS.**

CERTIFICADO NACIMIENTO :           = = = = =

NOMBRE DEL PADRE :                              NACIONALIDAD :      EDAD :

**JUAN NOE LOPEZ SOTO**                          **MEXICANA**        **33 AÑOS**

NOMBRE DE LA MADRE :                            NACIONALIDAD :      EDAD :

**NORMA ALICIA ANAYA CABALLERO**                 **MEXICANA**        **30 AÑOS**

SE EXTIENDE ESTA CERTIFICACION, EN CUMPLIMIENTO DEL ARTICULO 42 DEL CODIGO CIVIL VIGENTE DEL ESTADO
DE TAMAULIPAS, EN CIUDAD VICTORIA A LOS 6 DIAS DEL MES DE SEPTIEMBRE DEL 2005. DOY FE.

SELLO DEL
REGISTRO CIVIL

Gobierno del Estado de Tamaulipas
Secretaria General de Gobierno
DIRECCION DEL REGISTRO CIVIL

L.- ** I - 05 1545377

LIC. ROSALINDA BANDA GOMEZ
DIRECTORA DEL REGISTRO CIVIL

LIC. REYNALDO JAVIER GARZA
ELIZONDO
NOTARIO PUBLICO NUM. 258
REYNOSA , TAM.

El suscrito LIC. JORGE VALERIANO MEZA CHAPA, Adscrito en funciones a la Notaría Pública Número 266 (DOSCIENTOS SESENTA Y SEIS), con ejercicio en esta Ciudad, CERTIFICA: Que la anterior Copia FOTOSTATICA es fiel y exacta de Original, la cual doy fé haber tenido a la vista y la que cotejada devolví a su Presentante, va en ( 01 ) Foja(s) útil(es). Extiendo esta Certificación con mi Sello y Firma en Reynosa, Tamaulipas., a las 09:05 Hrs. del día 06 del mes de SEPTIEMBRE del 2005 Quedando Registrada esta Certificación bajo el número 12,973 del Libro Y1 de Control. certificaciones y verificaciones fuera de protocolo DOY FE.

**LIC. JORGE VALERIANO MEZA CHAPA**
Adscrito en Funciones a la
Notaría Pública Número 266



LIC. REYNALDO JAVIER GARZA
ELIZONDO
NOTARIO PUBLICO NUM. 266
REYNOSA, TAM.

Hidalgo County Health Dept.
Monday, August 29, 2005
**Personal Immunization Record**

| | | | |
|---|---|---|---|
| **Patient's Name:** | LOPEZ, NORMA | **Birthdate:** | 05/18/1989 |
| **Parent/Guardian:** | NORMA/NOE | **IMMTRAC Consent:** | Yes - |
| **Address:** | 608 KENNEDY | **Chart No:** | |
| | MCALLEN , TX 78501 | **Client ID:** | 5054780 |

| Vaccine | Dose 1 | Dose 2 | Dose 3 | Dose 4 | Dose 5 | Dose 6 |
|---|---|---|---|---|---|---|
| DTaP | 08/10/1993 | | | | | |
| DTP | 07/21/1989 | 09/21/1989 | 12/05/1989 | | | |
| Hep B - Pedi | 09/11/2001 | 10/12/2001 | 03/19/2002 | | | |
| Hib | 08/05/1991 | | | | | |
| Measles, Mumps, Rubella | 05/09/1990 | 06/22/1990 | 12/12/1990 | 04/28/1992 | | |
| Oral Polio Vaccine | 07/21/1989 | 09/02/1989 | 12/05/1989 | 08/22/1990 | 08/10/1993 | |
| Td | 05/04/2004 | | | | | |

_____

Had Varicella          12/01/2000

_____

MEDICAL EXEMPTIONS:_____

_____

Hidalgo County Health Dept.
McAllen Branch Office
300 E. Hachberry
McAllen, TX 78501
956-682-6155

Certified By _~~Zula Pna~~_____ Date _8/29/05_ Phone _682 6155_

Older revisions of this form already on file for students in school should not be replaced.



# La Universidad Autónoma de Tamaulipas

otorga al    señor

## Juan Noe López Soto

el título de

## Médico Cirujano

en atención a que demostró tener hechos los estudios requeridos por la ley y haber sido aprobado en el examen profesional que sustentó el día 23 de agosto de 1980, en la facultad de Medicina en H. Matamoros, Tam. de esta Universidad, según constancias archivadas en la Secretaría General de la misma.

"Verdad~Belleza~Probidad"

Dado en Ciudad Victoria, capital del Estado de Tamaulipas, Estados Unidos Mexicanos, el día 13 de octubre de 1981.



------------------------------------
Firma del interesado

El Rector de la Universidad.


Lic. Jesús Lavín Flores

El Secretario General.

------------------------------------
Lic. José Manuel Ñame Mier



# CLINICA PROVIDA

CIRUGIA EN GENERAL, PEDIATRIA, MATERNIDAD, GINECOLOGIA, MEDICINA INTERNA,
CARDIOLOGIA, MEDICINA FAMILIAR, MEDICINA GENERAL, TRAUMATOLOGIA.

SERVICIO MEDICO LAS 24 HRS. DEL DIA.

## Dr. Juan Noé López Soto

MEDICO CIRUJANO

CED. PROF. 700109 • REG. S.S.A. 88826 • R.F.C. LOSJ-560227-UIA

Con fecha 3 de Marzo de 1988
a las 2 de la tarde me atendio
de Parto el doctor Juan Noe Lopez Soto
habiendo nacido mi Hija Erika Vanessa Cantú Luna
Con un peso de 2,700 gramos

Atte    San Juana Luna Lira de Cantú
Domicilio - Zamacona 514. Colonia Benito Juárez
tel. 957-07-12. Cd Reynosa Tamaulipos.

BLVD. MARGARITA MAZA DE JUAREZ ESQ. C/IXTEPEC No. 801 • COL. BENITO JUAREZ • TELS. (899) 957 02 77, 957 02 88 • CD. REYNOSA, TAM. • C.P. 88790



# CLINICA PROVIDA

**CIRUGIA EN GENERAL, PEDIATRIA, MATERNIDAD, GINECOLOGIA, MEDICINA INTERNA,
CARDIOLOGIA, MEDICINA FAMILIAR, MEDICINA GENERAL, TRAUMATOLOGIA.**

**SERVICIO MEDICO LAS 24 HRS. DEL DIA.**

## Dr. Juan Noé López Soto

**MEDICO CIRUJANO**

CED. PROF. 700109 • REG. S.S.A. 88826 • R.F.C. LOSJ-560227-UIA

Con fecha 22 de Julio 1982
a las 6 de la tarde Me Atendio
de Parto el Doctor Juan Noe López Soto
habiendo Nacido Mi Hijo Rodrigo Cantú Luna
Con Un Peso de - 2.500 gramos

Atte    San Juana Luna Lira de Cantú
Domicilio Zamacona 514. colonia Benito Juárez
Tel. 957-07-12. Cd. Reynosa Tamaulipas.

BLVD. MARGARITA MAZA DE JUAREZ ESQ. C/IXTEPEC No. 801 • COL. BENITO JUAREZ • TELS.    957 02 77, 957 02 88 • CD. REYNOSA, TAM. • C.P. 88790

**Lic. Gilberto Padrón Cantú**

NOTARIO PUBLICO No. 43

JUAREZ 615 NORTE    TELS. 2-16-56 Y 2-30-39

CD. REYNOSA, TAM.

------VOLUMEN XXXVI.-TRIGESIMO SEXTO.------

------ACTA NUMERO 1914.-MIL NOVECIENTOS CATORCE.------

----En la Ciudad de Reynosa, Estado de Tamaulipas, Estados Uni-
dos Mexicnaos, siendo las nueve horas del día veinticinco de E
nero de mil novecientos ochenta y dos, ante mí, Licenciado GIL-
BERTO PADRON CANTU, Notario Público Número 43, Cuarenta y Tres,
en ejercicio en ésta ciudad, compareció por una parte el señor
Ingeniero ANGEL SALINAS FLORES en su carácter de Apoderado de
los señores Ingeniero Francisco Enrique Méndez Guerrero y Lidia
Silva de Méndez, personalidad que acredita con Carta Poder que
en este acto me exhibe y que agrego al apéndice del protocolo
bajo el mismo número de acta y volumen; y manifiesta ser mexica
no, mayor de edad, casado, empleado de Petróleos Mexicanos, ori
ginario de Doctor Coss, Nuevo León, y con domicilio en calle --
Chapultepec número sesenta y tres de la Colonia Valle Alto de -
ésta ciudad; y por la otra parte comparecen los señores Doctor
JUAN NOE LOPEZ SOTO y NORMA ALICIA ANAYA DE LOPEZ, quienes mani
fiestan ser mexicanos, casados, entre sí, mayores de edad, origi
nario el primero de Río Bravo, Tamaulipas, y en ejercicio de su
profesión y la segunda originaria de Ciudad Victoria, Tamauli--
pas, y dedicada a las labores del hogar, y con domicilio en ca-
lle Tercera entre Río Alamo y Purificación de la Colonia Prolon
gación Longoria de ésta ciudad. Manifiestan los comparecientes
encontrarse al corriente en el pago del Impuesto Federal sobre
la renta a excepción de la última quien no lo causa por no esta
manifestada, sin acreditármelo en forma legal por lo que les ad
vierto de las penas en que incurren los que declaran con false--
dad. Los comparecientes me son personalmente conocidos y tienen
a mi juicio capacidad jurídica plena y me expresan que solicitan
los servicios del suscrito a fín de formalizar un CONTRATO DE -
COMPRA VENTA que tienen concertado el cual es su voluntad suje-
tar al tenor de las siguientes Declaraciones y Cláusulas:------
--------------D E C L A R A C I O N E S:--------------
----I.-Declara el señor Ingeniero ANGEL SALINAS FLORES que sus
poderdantes son propietarios y legítimos poseedores de una supe

ficie de terrenourbano ubicado en el Fraccionamiento Las Fuentes
Sección Segunda de esta ciudad, identificado como lote número
11 de la manzana 20, con una superficie de 427.50 M2 (CUATRO--
CIENTOS VEINTISIETE METROS CUADRADOS CINCUENTA CENTIMETROS),lo
calizado bajo las siguientes medidas y colindancias:AL NORTE -
en 15.00 Metres con calle de Servicio "I";AL SUR en 15.00 Me--
tros con calle Novena;AL ESTE en 28.50 Metros con lote 9; AL
OESTE en 28.50 Metros con lote número 13.------------------------
-----II.-Continúa declarando el señor ingeniero ANGEL SALINAS -
FLORES, que el inmueble propiedad de sus poderdantes lo adqui-
rieron por contrato de compra venta el cual quedó registrado -
bajo los siguientes datos: Sección I, Número 3087, legajo 62,
Municipio de Reynosa,Tamaulipas, de fecha 5 de Marzo de 1976.-
-----III.-Continúa declarando el señor Ingeniero ANGEL SALINAS
FLORES, que el inmueble descrito en la primera declaración se
encuentra en la actualidad libre de todo gravamen y al corrien
te en el pago del Impuesto Predial correspondiente.------------
-----------------C L A U S U L A S:---------------------------
-----PRIMERA:-Por medio de este instrumento el señor Ingeniero
ANGEL SALINAS FLORES en su carácter de Apoderado de los señores
Ingeniero Francisco Enrique Méndez Guerrero y Lidia Silva de -
Méndez, vende, cede y traspasa en toda forma de derecho en fa-
vor de los señores Doctor JUAN NOE LOPEZ SOTO y NORMA ALICIA A
NAYA DE LOPEZ, el inmueble especificado en las declaraciones -
anteriores contadas sus costumbres, usos, servidumbres, mejo--
ras, accesiones y todo cuanto de hecho y por derecho le pudie-
ra corresponder al vendedor dentro de los límites del citado -
inmueble.-----------------------------------------------------
-----SEGUNDA:-El precio de la operación lo fijan las partes en
la cantidad de $85,000.00 (OCHENTA Y CINCO MIL PESOS 00/100 MO
NEDA NACIONAL), que el vendedor manifiesta tener recibido a su
entera satisfacción por parte del comprador, por lo que por es
te instrumento le otorga el recibo correspondiente.-----------
-----TERCERA:-El vendedor se obliga para con el comprador al -
saneamiento para el caso de evicción conforme a derecho.------



Lic. Gilberto Padrón Cantú

NOTARIO PUBLICO No. 43

JUAREZ 615 NORTE    TELS. 2-18-86 Y 2-30-39

CD. REYNOSA, TAM.

- 2 -

CUARTA:-En el presente contrato no ha habido error, dolo,
violencia, lesión, ni ningún otro vicio del consentimiento sien
do la cosa materia del mismo cierta y determinada y el precio
el justo y real  por lo que los comparecientes renuncian expresa
mente a las acciones o excepciones que la Ley concede por di---
chos conceptos.----------------------------------------------------
----------------------P E R S O N A L I D A D:----------------------
-----El señor Ingeniero ANGEL SALINAS FLORES, acredita su perso
nalidad de Apoderado de los señores Ingeniero Francisco Enrique
Méndez Guerrero y Lidia Silva de Méndez, con la carta poder --
que en este acto me exhibe, misma que doy fé tener ante mi vis-
ta y que dice a continuación.-CARTA PODER. Cd. Reynosa,Tam. a
22 de Enero de 1982.-Sr. a quien corresponda.-Por la presente -
doy al Sr. Ing. Angel Salinas Flores poder amplio, cumplido y bas
tante para que q nuestro nombre y representación efectúe los --
trámites de escrituración del solar  ubicado en la colonia Las
Fuentes, Sección Segunda, con superficie de 427.50 M2. identifi
cado como lote 11, manzana 20, inscrito en el Registro Público
de la Propiedad bajo la sección I, Número 3087, legajo 62, Muni
cipio de Reynosa,T.m. de fecha Marzo 5 de 1976. Así como para -
que a nuestro nombre y representación firme las escrituras defi
nitivas de compra venta.-Otorgante:Sr. Ing. Francisco E. Mendez
Guerrero y Lidia Silva de Méndez.-firmas;acepto el poder:Sr.Ing.
Angel Salinas Flores. Angel Salinas. firma.-Testigo:Clara E.Al-
varez de Hernández.-firma ilegible.-testigo.-Srita.Ma.de Lour--
des Mendoza Mtz.firma ilegible.-Al reverso:---El Licenciado Gil
erto Padrón Cantú.-Notario Público Número 43, Cuarenta y Tres,
en ejercicio en ésta ciudad:Certifica:Que con ésta fecha y ante
mi presencia comparecieron los señores Ingeniero Francisco Enri
que Méndez Guerrero, Lidia Silva de Mendez, Ing. Angel Salinas
Flores, Clara E.Alvarez de Hdz. y Ma. de Lourdes Mendoza Marti-
nez, quienes manifiestan que reconocen como suyas las firmas que
calzan el presente documento las cuales e-tamparon de su puño y
letra y ratifican en todas sus partes el contenido delmismo.Los

comparecientes me son personalmente conocidos y tienen a mi jui
cio capacidad jurídica plena.-Certificación Notarial número 10
355 del Libro de Actas fuera del Protocolo.-Doy Fé.- Cd.Reynosa
Tamps., Enero 25 de 1982.- Lic. Gilberto Padrón Cantú.-firma y
sello de autorizar del Notario.----------------------------
-----En los anteriores términos dejan los comparecients formali
zada la presente escritura,la cual una vez que les fué leída y
enterados de su alcance y fuerza legal, la ratificaron y firma
ron ante mi presencia el día de su fecha.- Doy Fé.-Angel Sali-
nas Flores.- Juan Noe López Soto.-Norma Alicia Anaya de López.
firmas.-Ante mí: Licenciado Gilberto Padrón Cantú.-firm ay se-
llo de autorizar del No-ario.----------------------------
----------------A U T O R I Z A C I O N:--------------------
----Confecha Febrero 15 de 1982, en que so recibió la Declara-
ción para el pago del impuesto sobre enajenación de bienes, I.
S.R.,Yo, el notario autorizo esta escritura.-Conste.-Licenciado
Gilberto Padrón Cantú.-firma y sello de autorizar del NOtario.-
-----DECLARACION PARA EL PAGO DEL IMPUESTO SOBRE ENAJENACION DE
BIENES, I.S.R.------------------------------------------------
---"FEB-15-82 502557 COT-435.- 38066.- Oficina Federal de Hacien
da en Cd.Reynosa,Ta-ps.-datos de identificación del Notario No.
43.- Padrón Cantú Gilberto.-No. registro federal de causantes:
PACG-300930.- domicilio:Juárez Norte 615.- localidad:Ciudad Rey
nosa,Tamaulipas.- fecha de entero:12 02 82.- datos de identifica
ción del adquirente:Lopez soto Dr. Juan Noe e Anaya de López --
Norma Alicia.-no.registro federal de causantes:LOSJ-560227.- do
micilio:Tercera e(Río Alamo y Purificación_ colonia:Prolonga---
ción Longoria. localidad:Ciudad Reynosa,Tamaulipas.- datos de i
dentificación del enaenante.-Salinas Flores Angel Ing. en rep.-
de Ing. Fco.Enrique Mendez Guerrero y Lidia Silva de Méndez.-
no. registro federal de causntes:SAFA-400328.- domicilio:Chapul
tepec 63.- colonia:Valle Alto.- localidad:Ciudad Reynosa,Tamau-
lipas.- descripción de la operación:compra venta.-número de es-

**Lic. Gilberto Padrón Cantú**
NOTARIO PUBLICO No. 43
JUAREZ 615 NORTE   TELS: 2-18-36 Y 2-30-39
CO. REYNOSA, TAM.

- 3 -

escritura:1914.- fecha de escritura:Enero 25 de 1982.- fecha de
adquisición:Enero 25 de 1982.- pago provisional por enajenación
de bienes,I.S.R.435.00.- total a pagar:435.00.- pago en efecti
vo:435.00.- firma del notario, contribuyente o de su represen-
tante legal:firma y sello de autorizar del nOtario.- nombre com
pleto y R.F.C. de quien firma:Lic. Gilberto Padrón Cantú.PACG-
300930.-ingreso total:$85,000.00.- costo ajustado del terreno:
$71,000.00.- fecha de adquisición:día 6 mes II año 1976.-valor
de adquisición:$25,000.00.- total de deducciones:$71,000.00.-
ingreso gravable:$14,000.00.- pago provisional total:435.00".--
ES PRIMER TESTIMONIO FIEL Y CORRECTO SACADO A LA LETRA DE SUS ORIGI
NALES QUE OBRAN EN EL PROTOCOLO DE INSTRUMENTOS PUBLICOS A MI CARGO
BAJO EL NUMERO DE ACTA Y VOLUMEN AL PRINCPIO MENCIONADOS VA EN TRES
FOJAS UTILES DEBIDAMENTE SELLADAS, COTEJADAS Y FIRMADAS. SE EXPIDE
A SOLICITUD DE LOS SEÑORES DOCTOR JUA NOE LOPEZ SOTO Y NORMA ALICIA
ANAYA DE LOPEZ, EN LA CIUDAD DE REYNOSA, TAMAULIPAS, SIENDO LOS ---
QUINCE DIAS DEL MES DE FEBRERO DE MIL NOVECIENTOS OCHENTA Y DOS.-
DOY FE.------------------------------

LIC.GILBERTO PADRON CANTU.
NOTARIO PUBLICO NUMERO 43.-

Cotejado

**DATOS DE REGISTRO**

Sección No. 3875 Legajo 78
Municipio de Reynosa
Derechos causados $ 790.2
Por recibo N° 270768 Fecha 6-6
expedido por la Sección de Recaudación de la Tesorería
General del Estado.

Cd. Victoria, Tam. a 6 de mayo de 1982

El Director del Reg. Púb. de la Propiedad

El Secretario,

RECEIVED FROM *Mrs. Norma Lopez*
$550

*Five Hundred and Fifty*  DOLLARS

FOR RENT  *816 - II-C - Galveston Av.*

FROM *2/1/99*  TO *2/2/99*

| ACCOUNT | | cash |
|---|---|---|
| PAYMENT | | check |
| BALANCE DUE | | |

BY _____

---

**Receipt**  No. 235399  $550

RECEIVED FROM *Mrs. Norma Lopez*

*Five Hundred and Fifty 00/01*  DOLLARS

FOR RENT  *816 - II-C - Galveston Av.*

FROM *5/1/01*  TO *5/31/01*

| ACCOUNT | | cash |
|---|---|---|
| PAYMENT | | check |
| BALANCE DUE | | |

BY _____

---

**RECEIPT**

DATE *5/1/01*  No. 0556449  $550

RECEIVED FROM *Mrs. Norma Lopez*

*Five Hundred and Fifty 00/00*  DOLLARS

FOR RENT  *816 II-C - Galveston Av.*

| ACCOUNT | | CASH |
|---|---|---|
| PAYMENT | | CHECK |
| BAL. DUE | | MONEY ORDER |

FROM *5/1/01*  TO *5/31/01*  BY _____  1182

---

**RECEIPT**

DATE *6/1/01*  No. 0556450  $550

RECEIVED FROM *Mrs. Norma Lopez*

*Five Hundred and Fifty*  DOLLARS

FOR RENT  *816 - II-B - Galveston Av.*

| ACCOUNT | | CASH |
|---|---|---|
| PAYMENT | | CHECK |
| BAL. DUE | | MONEY ORDER |

FROM *6/1/01*  TO *6/30/01*  BY _____  1182

**RECEIPT**

LAS MISIONES
3007 PLANTATION BLVD
MISSION, TEXAS 78572

DATE _July 20, 2004_    No. **483039**

RECEIVED FROM _Noe Lopez_    $ 730.⁰⁰

_Seven Hundred Thirty and ⁰⁰/₁₀₀ ~_ DOLLARS

● FOR RENT
○ FOR _August Rent_

| ACCOUNT | | ○ CASH | FROM _____ TO _____ |
| PAYMENT | 730 00 | ○ CHECK | |
| BAL. DUE | | ○ MONEY ORDER | BY _Sandra Vega_ |

1182



TEXAS APARTMENT ASSOCIATION

**Apartment Lease Contract**

Date of Lease Contract: _____
(when this Lease Contract is filled out)

*This is a binding contract. Read carefully before signing.*

| Moving In — General Information |
| --- |

**1. PARTIES.** This Lease Contract is between *you*, the resident(s) (list all people signing the Lease Contract):

_____

_____ and *us*, the owner:

*(name of apartment community or title holder)*. You've agreed to rent Apartment No. _____, at _____ (street address) in _____ (city), Texas, _____ (zip code) for use as a private residence only. The terms "you" and "your" refer to all residents listed above. The terms "we," "us," and "our" refer to the owner listed above and not to property managers or anyone else. Written notice to or from our managers constitutes notice to or from us. If anyone else has guaranteed performance of this Lease Contract, a separate Lease Contract Guaranty for each guarantor is attached.

**2. OCCUPANTS.** The apartment will be occupied only by you and (list all other occupants not signing the Lease Contract):

_____

_____

No one else may occupy the apartment. Persons not listed above must not stay in the apartment for more than ___ consecutive days without our prior written consent, and no more than twice that many days in any one month. If the previous space isn't filled in, two days per month is the limit.

**3. LEASE TERM.** The initial term of the Lease Contract begins on the ____ day of _____ (year), and ends at midnight the ____ day of _____ (year). This Lease Contract will automatically renew month-to-month unless either party gives at least ___ days written notice of termination or intent to move-out as required by paragraph 37. If the number of days isn't filled in, at least 30 days notice is required.

**4. SECURITY DEPOSIT.** The total security deposit for all residents is $_____ due on or before the date this Lease Contract is signed. This amount [check one] □ does □ does not include an animal deposit. Any animal deposit must be stated in an animal addendum. See paragraphs 41 and 42 for security deposit return information.

**5. KEYS AND FURNITURE.** You will be provided ___ apartment key(s), ___ mailbox key(s), and ___ other access devices for _____. Any resident, occupant, or spouse who, according to a remaining resident's affidavit, has permanently moved out or is under court order to not enter the apartment, is (at our option) no longer entitled to occupancy, keys, or other access devices. Your apartment will be [check one]: □ furnished or □ unfurnished

**6. RENT AND CHARGES.** You will pay $_____ per month for rent, payable in advance and without demand [check one]: □ at the on-site manager's office, or □ at _____.

Prorated rent of $_____ is due for the remainder of [check one]: □ 1st month or □ 2nd month, on _____ (year). Otherwise, you must pay your rent on or before the 1st day of each month (due date) with no grace period. Cash is unacceptable without our prior written permission. You must not withhold or offset rent unless authorized by statute. We may, at our option, require at any time that you pay all rent and other sums in cash, certified or cashier's check, money order, or one monthly check, rather than multiple checks. If you don't pay all rent on or before the ____ day of the month and we haven't given notice to vacate before that date, you'll pay a late initial charge

of $_____ plus a late charge of $_____ per day after that date until paid in full. Daily late charges will not exceed 15 days for any single month's rent. You'll also pay a charge of $_____ for each returned check or rejected automatic electronic draft, plus initial and daily late charges from due date until we receive acceptable payment. If you don't pay rent on time, you'll be delinquent and all remedies under state law and this Lease Contract will be authorized. If you violate the animal restrictions of paragraph 27 or other animal rules, you'll pay an initial charge of $_____ per animal (not to exceed $100 per animal) and a daily charge of $_____ per animal (not to exceed $10 per day per animal) from the date the animal was brought into your apartment until it is finally removed. We'll also have all other remedies for such violation.

**7. UTILITIES.** We'll pay for the following items, if checked: □ gas □ water □ wastewater □ electricity □ trash □ cable TV □ master antenna. You'll pay for all other utilities, related deposits, and any charges, fees, or services on such utilities during your Lease Contract term. You must not allow any utilities (other than cable TV) to be cut off or switched for any reason—including disconnection for not paying your bills—until the Lease Contract term or renewal period ends. If a utility is submetered or prorated by an allocation formula, we will attach an addendum to the Lease Contract in compliance with state agency rules or city ordinance. If a utility is individually metered, it must be connected in your name and you must notify the utility provider of your move-out date so the meter can be timely read. If you delay getting it turned on in your name by lease commencement or cause it to be transferred back into our name before you surrender or abandon the unit, you'll be liable for a $_____ charge (not to exceed $50), plus the actual or estimated cost of the utilities used while the utility should have been connected in your name. If you are in an area open to competition and your unit is individually metered, you may choose or change your retail electric provider at any time. If you qualify, your provider will be the same as ours, unless you choose a different provider. If you choose or change your provider, you must give us written notice. You must pay all applicable provider fees, including any fees to change service back into our name after you move out.

**8. INSURANCE.** *Our insurance does not provide coverage for your personal property. We urge you to get your own insurance for losses due to theft, fire, water damage, and the like.* You intend to [check one]: □ not buy insurance to protect against such losses, or □ buy insurance from another source to cover such losses. If neither is checked, you acknowledge that you will not have insurance coverage.

**9. SECURITY DEVICES. What We Must Provide.** Texas law requires, with some exceptions, that we must provide at no cost to you when occupancy begins: (1) a window latch on each window; (2) a doorviewer (peephole) on each exterior door; (3) a pin lock on each sliding door, (4) either a door handle latch or a security bar on each sliding door, (5) a keyless bolting device (deadbolt) on each exterior door; and (6) either a keyed doorknob lock or a keyed deadbolt lock on one entry door. Keyed lock(s) will be rekeyed after the prior resident moves out. The rekeying will be done either before you move in or within 7 days after you move in, as required by statute. If we fail to install or rekey security devices as required by the Property Code, you have the right to do so and deduct the reasonable cost from your next rent payment under Section 92.165(1) of the Code.

**What You Are Now Requesting.** Subject to some limitations, under Texas law you may ask us to: (1) install one keyed deadbolt lock on an exterior door if it does not have one; (2) install a security bar on a sliding glass door if it does not have one; and (3) change or rekey locks or latches. We must comply with those requests, but you must pay for them. Subject to statutory restrictions on what security devices you may request, you are now requesting us to install or change at your expense

If no item is filled in, then you are not requesting some at this time.

**Payment.** We will pay for missing security devices that are required by statute. You will pay for: (1) rekeying that you request (except when we failed to rekey after the previous resident moved out); and (2) repairs or replacements due to misuse or damage by you or your family, occupants, or guests. You must pay immediately after the work is done unless state statute authorizes advance payment. You also must pay for additional or changed security devices you request, in advance or afterward, at our option.

| Special Provisions and "What If" Clauses |
| --- |

**10. SPECIAL PROVISIONS.** The following or attached special provisions and any addenda or written rules furnished to you at or before signing will become a part of this Lease Contract and will supersede any conflicting provisions of this printed Lease Contract form.

_____

_____

_____

**11. UNLAWFUL EARLY MOVE-OUT; RELETTING CHARGE.** You'll be liable for a reletting charge of $_____ (not to exceed 85% of the highest monthly rent during the Lease Contract term) if you:
(1) fail to move in, or fail to give written move-out notice as required in paragraphs 23 or 37; or
(2) move out without paying rent in full for the entire Lease Contract term or renewal period, or
(3) move out at our demand because of your default, or
(4) are judicially evicted.

*The reletting charge is not a cancellation fee and does not release you from your obligations under this Lease Contract. See the first paragraph of page 2*

Your Initials: _____  Initials of Our Representative: _____      APARTMENT LEASE CONTRACT © 2003, TEXAS APARTMENT ASSOCIATION, INC.,     PAGE 1 OF 6

**Not a Release.** The reletting charge is not a Lease Contract cancellation fee or buyout fee. It is a liquidated amount covering only part of our damages; that is, our time, effort, and expense in finding and processing a replacement. These damages are uncertain and difficult to ascertain—particularly those relating to inconvenience, paperwork, advertising, showing apartments, utilities for showing, checking prospects, office overhead, marketing costs, and locator-service fees. You agree that the reletting charge is a reasonable estimate of such damages and that the charge is due whether or not our reletting attempts succeed. If no amount is stipulated, you must pay our actual reletting costs so far as they can be determined. The reletting charge does not release you from continued liability for future or past-due rent; charges for cleaning, repairing, repainting, or unreturned keys; or other sums due.

12. **DAMAGES AND REIMBURSEMENT.** You must promptly pay or reimburse us for loss, damage, consequential damages, government fines or charges, or cost of repairs or service in the apartment community due to a violation of the Lease Contract or rules, improper use, negligence, or intentional conduct by you or your invitees, guests, or occupants. You will indemnify and hold us harmless from all liability arising from the conduct of you, your invitees, guests, or occupants, or our representatives who perform at your request services not contemplated in this Lease Contract. Unless the damage or wastewater stoppage is due to our negligence, we're not liable for—and you must pay for—repairs, replacement costs, and damage to the following if occurring during the Lease Contract term or renewal period: (1) damage to doors, windows, or screens; (2) damage from windows or doors left open; and (3) damage from wastewater stoppages caused by improper objects in lines exclusively serving your apartment. We may require payment at any time, including advance payment of repairs for which you're liable. Delay in demanding sums you owe is not a waiver.

13. **CONTRACTUAL LIEN AND PROPERTY LEFT IN APARTMENT.** All property in the apartment is (unless exempt under Section 54.042 of the Texas Property Code) subject to a contractual lien to secure payment of delinquent rent. For this purpose, "apartment" excludes common areas but includes interior living areas and exterior patios, balconies, attached garages, and storerooms for your exclusive use.

**Removal After We Exercise Lien for Rent. If your rent is delinquent, our representative may peacefully enter the apartment and remove and/or store all property subject to lien.** Written notice of entry must be left afterwards in the apartment in a conspicuous place—plus a list of items removed. The notice must state the amount of delinquent rent and the name, address, and phone number of the person to contact about the amount owed. The notice must also state that the property will be promptly returned when the delinquent rent is fully paid. All property in the apartment is presumed to be yours unless proven otherwise.

**Removal After Surrender, Abandonment, or Eviction.** We or law officers may remove and/or store all property remaining in the apartment or in common areas (including any vehicles you or any occupant or guest owns or uses) if you are judicially evicted or if you surrender or abandon the apartment (see definitions in paragraph 42).

**Storage.** We will store property removed under a contractual lien. We may store, but have no duty to store, property removed after judicial eviction, surrender, or abandonment of the apartment. We're not liable for casualty loss, damage, or theft except for property removed under a contractual lien. You must pay reasonable charges for our packing, removing, storing, and selling any property. We have a lien on all property removed and stored after surrender, abandonment, or judicial eviction for all sums you owe, with one exception. Our lien on property listed under Property Code Section 54.042 is limited to charges for packing, removing, and storing.

**Redemption.** If we've seized and stored property under a contractual lien for rent as authorized by the Property Code, you may redeem the property by paying all the delinquent rent due at the time of seizure. But if notice of sale (set forth as follows) is given before you seek redemption, you may redeem only by paying the delinquent rent and reasonable charges for packing, removing, and storing. If we've removed and stored property after surrender, abandonment, or judicial eviction, you may redeem only by paying all sums you owe, including rent, late charges, reletting charges, storage, damages, etc. We may

return redeemed property at the place of storage, the management office, or the apartment (at our option). We may require payment by cash, money order, or certified check.

**Disposition or Sale.** Except for animals and property removed after the death of a sole resident, we may throw away or give to a charitable organization all items of personal property that are: (1) left in the apartment after surrender or abandonment; or (2) left outside more than 1 hour after a writ of possession is executed, following judicial eviction. Animals removed after surrender, abandonment, or eviction may be kenneled or turned over to local authorities or humane societies. Property not thrown away or given to charity may be disposed of only by sale, which must be held no sooner than 30 days after written notice of date, time, and place of sale is sent by both regular mail and certified mail (return receipt requested) to your last known address. The notice must itemize the amounts you owe and the name, address, and phone number of the person to contact about the sale, the amount owed, and your right to redeem the property. Sale may be public or private, is subject to any third-party ownership or lien claims, must be to the highest cash bidder, and may be in bulk, in batches, or item-by-item. Proceeds exceeding sums owed must be mailed to you at your last known address within 30 days after sale.

14. **FAILING TO PAY FIRST MONTH'S RENT.** If you don't pay the first month's rent when or before the Lease Contract begins, all future rent will be automatically accelerated without notice and immediately due. We also may end your right of occupancy and recover damages, future rent, reletting charges, attorney's fees, court costs, and other lawful charges. Our rights, remedies, and duties under paragraphs 11 and 32 apply to acceleration under this paragraph.

15. **RENT INCREASES AND LEASE CONTRACT CHANGES.** No rent increases or Lease Contract changes are allowed before the initial Lease Contract term ends, except for changes allowed by any special provisions in paragraph 10, by a written addendum or amendment signed by you and us, or by reasonable changes of apartment rules allowed under paragraph 18. If, at least 5 days before the advance notice deadline referred to in paragraph 3, we give you written notice of rent increases or Lease Contract changes effective when the Lease Contract term or renewal period ends, this Lease Contract will automatically continue month-to-month with the increased rent or Lease Contract changes. The new modified Lease Contract will begin on the date stated in the notice (without necessity of your signature) unless you give us written move-out notice under paragraph 37.

16. **DELAY OF OCCUPANCY.** If occupancy is or will be delayed for construction, repairs, cleaning, or a previous resident's holding over, we're not responsible for the delay. The Lease Contract will remain in force subject to: (1) abatement of rent on a daily basis during delay, and (2) your right to terminate as set forth below. Termination notice must be in writing. After termination, you are entitled only to refund of deposit(s) and any rent paid. Rent abatement or Lease Contract termination does not apply if delay is for cleaning or repairs that don't prevent you from occupying the apartment.

If there is a delay and we haven't given notice of delay as set forth immediately below, you may terminate up to the date when the apartment is ready for occupancy, but not later.

(1) If we give written notice to any of you when or after the Lease Contract begins—and the notice states that occupancy has been delayed because of construction or a previous resident's holding over, and that the apartment will be ready on a specific date—you may terminate the Lease Contract within 3 days of your receiving the notice, but not later.

(2) If we give written notice to any of you before the effective Lease Contract date and the notice states that construction delay is expected and that the apartment will be ready for you to occupy on a specific date, you may terminate the Lease Contract within 7 days after any of you receives written notice, but not later. The readiness date is considered the new effective Lease Contract date for all purposes. This new date may not be moved to an earlier date unless we and you agree.

17. **DISCLOSURE RIGHTS.** If someone requests information on you or your rental history for law-enforcement, governmental, or business purposes, we may provide it. At our request, any utility provider may furnish us information about pending or actual connections or disconnections of utility service to your unit.

## While You're Living in the Apartment

18. **COMMUNITY POLICIES OR RULES.** You and all guests and occupants must comply with any written apartment rules and community policies, including instructions for care of our property. Our rules are considered part of this Lease Contract. We may make reasonable changes to written rules, effective immediately, if they are distributed and applicable to all units in the apartment community and do not change dollar amounts on page 1 of this Lease Contract.

19. **LIMITATIONS ON CONDUCT.** The apartment and other areas reserved for your private use must be kept clean. Trash must be disposed of at least weekly in appropriate receptacles in accordance with local ordinances. Passageways may be used only for entry or exit. Any swimming pools, saunas, spas, tanning beds, exercise rooms, storerooms, laundry rooms, and similar areas must be used with care in accordance with apartment rules and posted signs. Glass containers are prohibited in or near pools and all other common areas. You, your occupants, or guests may not anywhere in the apartment community use candles or use kerosene lamps or heaters without our prior written approval, or cook on balconies or outside, or solicit business or contributions. Conducting any kind of business (including child care services) in your apartment or in the apartment community is prohibited—except that any lawful business conducted "at home" by computer, mail, or telephone is permissible if customers, clients, patients, or other business associates do not come to your apartment for business purposes. We may regulate: (1) the use of patios, balconies, and porches; (2) the conduct of furniture movers and delivery persons; and (3) recreational activities in common areas.

We may exclude from the apartment community guests or others who, in our judgment, have been violating the law, violating this Lease Contract or any apartment rules, or disturbing other residents, neighbors, visitors, or owner representatives. We may also exclude from any outside area or common area a person who refuses to show photo identification or refuses to identify himself or herself as a resident, occupant, or guest of a specific resident in the community.

20. **PROHIBITED CONDUCT.** You and your occupants or guests may not engage in the following activities: criminal conduct; behaving in



violation charges and animal-removal charges are liquidated damages for our time, inconvenience, and overhead (except for attorney's fees and litigation costs) in enforcing animal restrictions and rules. We may remove an unauthorized animal by (1) leaving, in a conspicuous place in the apartment, a 24-hour written notice of intent to remove the animal, and (2) following the procedures of paragraph 28. We may keep or kennel the animal or turn it over to a humane society or local authority. When keeping or kenneling an animal, we won't be liable for loss, harm, sickness, or death of the animal unless due to our negligence. We'll return the animal to you upon request if it has not already been turned over to a humane society or local authority. You must pay for the animal's reasonable care and kenneling charges. We have no lien on the animal for any purpose

28. **WHEN WE MAY ENTER** If you or any guest or occupant is present, then repairers, servicers, contractors, our representatives, or other persons listed in (2) below may peacefully enter the apartment at reasonable times for the purposes listed in (2) below If nobody is in the apartment, then such persons may enter peacefully and at reasonable times by duplicate or master key (or by breaking a window or other means when necessary) if

  (1)  written notice of the entry is left in a conspicuous place in the apartment immediately after the entry, and

  (2)  entry is for responding to your request, making repairs or replacements, estimating repair or refurbishing costs, performing pest control, doing preventive maintenance, checking for water leaks, changing filters, testing or replacing smoke-detector batteries, retrieving unreturned tools, equipment, or appliances, preventing waste of utilities, exercising our contractual lien, leaving notices, delivering, installing, reconnecting, or replacing appliances, furniture, equipment, or security devices, removing or rekeying

unauthorized security devices, removing unauthorized window coverings, stopping excessive noise; removing health or safety hazards (including hazardous materials), or items prohibited under our rules; removing perishable foodstuffs if your electricity is disconnected; removing unauthorized animals; cutting off electricity according to statute; retrieving property owned or leased by former residents; inspecting when immediate danger to person or property is reasonably suspected; allowing persons to enter as you authorized in your rental application (if you die, are incarcerated, etc.); allowing entry by a law officer with a search or arrest warrant, or in hot pursuit; showing apartment to prospective residents (after move-out or vacate notice has been given); or showing apartment to government representatives for the limited purpose of determining housing and fire ordinance compliance, and to lenders, appraisers, contractors, prospective buyers, or insurance agents

29. **MULTIPLE RESIDENTS OR OCCUPANTS** Each resident is jointly and severally liable for all Lease Contract obligations. If you or any guest or occupant violates the Lease Contract or rules, all residents are considered to have violated the Lease Contract. Our requests and notices (including sale notices) to any resident constitute notice to all residents and occupants. Notices and requests from any resident or occupant (including notices of Lease Contract termination, repair requests, and entry permissions) constitute notice from all residents. In eviction suits, each resident is considered the agent of all other residents in the apartment for service of process. Any resident who defaults under this Lease Contract will indemnify the non-defaulting residents and their guarantors. Security deposit refunds may be by one check jointly payable to all residents. The check and any deduction itemizations may be mailed to one resident only

**Replacements**

30. **REPLACEMENTS AND SUBLETTING.** Replacing a resident, subletting, or assignment is allowed only after we consent in writing If departing, or remaining, residents find a replacement resident acceptable to us before moving out and we expressly consent to the replacement, subletting, or assignment, then

  (1)  a reletting charge will not be due
  (2)  a reasonable administrative charge will be due, and a reletting fee will be due if reletting is requested or required; and
  (3)  the departing and remaining residents will remain liable for all Lease Contract obligations for the rest of the original Lease Contract term

**Procedures for Replacement** If we approve a replacement resident, then, at our option (1) the replacement resident must sign this Lease Contract with or without an increase in the total security deposit, or (2) the remaining and replacement residents must sign an entirely new Lease Contract. Unless we agree otherwise in writing, your security deposit will automatically transfer to the replacement resident as of the date we approve. The departing resident will no longer have a right to occupancy or a security deposit refund, but will remain liable for the remainder of the original Lease Contract term unless we agree otherwise in writing, even if a new Lease Contract is signed

**Default by Either Party**

31. **DEFAULT BY OWNER** We'll act with customary diligence to

  (1)  keep common areas reasonably clean, subject to paragraph 25
  (2)  maintain fixtures, furniture, hot water, heating, and A/C equipment,
  (3)  substantially comply with applicable federal, state, and local laws regarding safety, sanitation, and fair housing, and
  (4)  make all reasonable repairs, subject to your obligation to pay for damages for which you are liable

If we violate any of the above, you may possibly terminate this Lease Contract and exercise other remedies under Property Code Section 92.056 by following this procedure

  (a)  all rent must be current and you must make a written request for repair or remedy of the condition—after which we'll have a reasonable time for repair or remedy

  (b)  if we fail to do so, you must make a second written request for the repair or remedy (to make sure that there has been no miscommunication between us)—after which we'll have a reasonable time for the repair or remedy and

  (c)  if the repair or remedy still hasn't been accomplished within that reasonable time period, you may immediately terminate this Lease Contract by giving us a final written notice You also may exercise other statutory remedies

Instead of giving the two written requests referred to above, you may give us one request by certified mail, return receipt requested, or by registered mail—after which we'll have a reasonable time for repair or remedy "Reasonable time" takes into account the nature of the problem and the reasonable availability of materials, labor, and utilities Your rent must be current at the time of any request We will refund security deposits and prorated rent as required by law

32. **DEFAULT BY RESIDENT** You'll be in default if (1) you don't pay rent or other amounts that you owe; (2) you or any guest or occupant violates this Lease Contract, apartment rules, or fire, safety, health, or criminal laws, regardless of whether arrest or conviction occurs; (3) you abandon the apartment (4) you give incorrect or false answers in a rental application; (5) you or any occupant is arrested, charged, detained, convicted, or given deferred adjudication for a felony offense involving actual or potential physical harm to a person, or involving possession, manufacture, or delivery of a controlled substance, marijuana, or drug paraphernalia as defined in the Texas Controlled Substances Act, (6) any illegal drugs or paraphernalia are found in your apartment, or (7) you or any occupant, in bad faith, makes an invalid habitability complaint to an official or employee of a utility company or the government

**Eviction** If you default and may end your right of occupancy by giving you a 24-hour written notice to vacate Notice may be by: (1) regular mail; (2) certified mail, return receipt requested; (3) personal delivery to any resident, (4) personal delivery at the apartment to any occupant over 16 years old, or (5) affixing the notice to the inside of the apartment's main entry door. Termination of your possession rights or subsequent reletting doesn't release you from liability for future rent or other Lease Contract obligations After giving notice to vacate or filing an eviction suit, we may still accept rent or other sums due, the filing or acceptance doesn't waive or diminish our right of eviction, or any other contractual or statutory right. Accepting money at any time doesn't waive our right to damages, past or future rent or other sums, or to continue with eviction proceedings

**Acceleration** All monthly rent for the rest of the Lease Contract term or renewal period will be accelerated automatically without notice or demand (before or after acceleration) and will be immediately due and delinquent if, without our written consent (1) you move out, remove property or preparing to move out, or give oral or written notice (by you or any occupant) of intent to move out before the Lease Contract term or renewal period ends, and (2) you've not paid all rent for the entire Lease Contract term or renewal period. Such conduct is considered a default for which we need not give you notice or demand. It won't be accelerated or if you're judicially evicted or move out when we demand because you've defaulted Acceleration is subject to our mitigation obligations below

**Holdover** You or any occupant, invitee, or guest must not hold over beyond the date contained in your move-out notice or our notice to vacate (or beyond a different move-out date agreed to by the parties in writing) If a holdover occurs, then (1) holdover rent is due in advance on a daily basis and may become delinquent without notice or demand; (2) rent for the holdover period will be increased by 25% over the then existing rent, without notice, (3) you'll be liable to us (subject to our mitigation duties) for all rent for the full term of the previously signed Lease Contract of a new resident who can't occupy because of the holdover, and (4) at our option, we may extend the Lease Contract term—for up to one month from the date of notice of Lease Contract extension—by delivering written notice to you or your apartment while you continue to hold over

**Other Remedies** If your rent is delinquent and we give you 5 days' prior written notice, we may terminate electricity that we've furnished at our expense, unless governmental regulations on submetering or utility proration provide otherwise We may report unpaid amounts to credit agencies If you default and move out early, you will pay us any amounts stated to be rental discounts agreed to in writing, in addition to other sums due Upon your default, we have all other legal remedies, including Lease Contract termination and statutory lockout under Section 92.0081 of the Property Code Unless a party is seeking exemplary, punitive, sentimental, or personal-injury damages, the prevailing party may recover from the non-prevailing party attorney's fees and all other litigation costs Late charges are liquidated damages for our time, inconvenience, and overhead in collecting late rent (but are not for attorney's fees and litigation costs) All unpaid amounts bear 18% interest per year from due date, compounded annually You must pay all collection-agency fees if you fail to pay all sums due within 10 days after we mail you a letter demanding payment and stating that collection agency fees will be added if you don't pay all sums by that deadline

**Mitigation of Damages** If you move out early, you'll be subject to paragraph 11 and all other remedies. We'll exercise customary diligence to relet and minimize damages. We'll credit all subsequent rent that we actually receive from subsequent relets against your liability for past due and future rent and other sums due

## General Clauses

.5  MISCELLANEOUS.  Neither we nor any of our representatives have made any oral promises, representations, or agreements.  This Lease Contract is the entire agreement between you and us.  Our representatives (including management personnel, employees, and agents) have no authority to waive, amend, or terminate this Lease Contract or any part of it, unless in writing, and no authority to make promises, representations, or agreements that impose security duties or other obligations on us or our representatives unless in writing.  No action or omission of our representatives will be considered a waiver of any subsequent violation, default, or time or place of performance.  Our not enforcing or belatedly enforcing written-notice requirements, rental due-dates, acceleration, liens, or other rights isn't a waiver under any circumstances.  Except when notice or demand is required by statute, you waive any notice and demand for performance from us if you default.  Written notice to or from our managers constitutes notice to or from us.  Any person giving a notice under this Lease Contract should retain a copy of the memo, letter, or fax that was given.  Fax signatures are binding.  All notices must be signed.  Notices may not be given by email.

Exercising one remedy won't constitute an election or waiver of other remedies.  Insurance subrogations waived by all parties.  All remedies are cumulative.  No employee, agent, or management company is personally liable for any of our contractual, statutory, or other obligations merely by virtue of acting on our behalf.  This Lease Contract binds subsequent owners.  Neither an invalid clause nor the omission of initials on any page invalidates this Lease Contract.  All notices and documents may be in English and, at our option, in any language that you read or speak.  All provisions regarding our non-liability and non-duty apply to our employees, agents, and management companies.  This Lease Contract is subordinate to superior (existing and future recorded) mortgages, at lender's option.  All Lease Contract obligations must be performed in the county where the apartment is located.

We may deactivate or not install keyless bolting devices on your doors if (1) you or an occupant in the dwelling is over 55 or disabled, and (2) the requirements of Section 92.153(e) or (f) of the Property Code are satisfied.

## Security Guidelines for Residents

36.  SECURITY GUIDELINES.  In cooperation with the Texas Apartment Association, we'd like to give you some important safety guidelines.  The Texas Police Association and the Sheriffs' Association of Texas have approved these suggestions.  We recommend that you follow these guidelines and urge all other occupants in your dwelling, including any children you may have, about these guidelines.

### PERSONAL SECURITY—WHILE INSIDE YOUR APARTMENT

1   Lock your doors and windows—even while you're inside

2   Engage the keyless deadbolts on all doors while you're inside

3   When answering the door, see who is there by looking through a window or peephole.  If you don't know the person, first talk with him or her without opening the door.  Don't open the door if you have any doubts.

4   If children (who are old enough to take care of themselves) are left alone in your apartment, tell them to use the keyless deadbolt and refuse to let anyone inside while you are gone—regardless of whether the person is a stranger or an apartment maintenance or management employee

5   Don't put your name, address, or phone number on your key ring

6   If you're concerned because you've lost your key or because someone you distrust has a key, ask the management to rekey the locks.  You have a statutory right to have that done, as long as you pay for the rekeying

7   Dial 911 for emergencies.  If the 911 number does not operate in your area, keep phone numbers handy for the police, fire, and emergency medical services.  If an emergency arises, call the appropriate governmental authorities first, then call the management

8   Check your smoke detector monthly to make sure it is working properly and the batteries are still okay

9   Check your door locks, window latches, and other security devices regularly to be sure they are working properly

10  If your doors or windows are unsecure due to break-ins or malfunctioning locks or latches, stay with friends or neighbors until the problem is fixed

11  Immediately report to management—in writing, dated and signed—any needed repairs of locks, latches, doors, windows, smoke detectors, and alarm systems

12  Immediately report to management—in writing, dated and signed—any malfunction of other safety devices outside your apartment, such as broken gate locks, burned-out lights in stairwells and parking lots, blocked passages, broken railings, etc

13  Close curtains, blinds, and window shades at night.

14  Mark or engrave your driver's license number or other identification on valuable personal property

Cable channels that are provided may be changed during the Lease Contract term if the change applies to all residents.  Utilities may be used only for normal household purposes and must not be wasted.  If your electricity is ever interrupted, you must use only battery-operated lighting.

34  PAYMENTS.  Payment of all sums is an independent covenant.  At our option and without notice, we may apply money received (other than sale proceeds under paragraph 13 or utility payment subject to governmental regulations) first to any of your unpaid obligations, then to current rent—regardless of notations on checks or money orders and regardless of when the obligations arose.  All sums other than rent are due upon our demand.  After the due date, we do not have to accept the rent or any other payments.

35  TAA MEMBERSHIP.  We represent that, at the time of signing, this Lease Contract or a Lease Contract Renewal form (1) we, (2) the management company that represents us, or (3) any local, state office that processed you as a member in good standing of both the Texas Apartment Association and the affiliated local apartment association for the area where the apartment is located.  The name is either an owner/management company member or an associate member doing business as a locator service (whose name and address is disclosed on page 6).  If not, then the owner may apply (1) this Lease Contract is voidable at your option and is unenforceable by us except to (2) we will be in violation of the Texas Penal Code and the Texas Deceptive Trade Practices Act.  The above remedies also apply if both of the following occur: (1) the Lease Contract is automatically renewed on a month-to-month basis two or more times after membership in TAA and the local association has lapsed, and (2) neither the owner nor the management company is a member of TAA and the local association at the time of the most automatic renewal.  A signed affidavit from the local affiliated apartment association which attests to non-membership when the Lease Contract or renewal was signed will be conclusive evidence of non-membership.  Governmental entities may use TAA forms of TAA agents in writing.

### PERSONAL SECURITY—WHILE OUTSIDE YOUR APARTMENT

15  Lock your doors while you're gone.  Lock any door handle lock, keyed deadbolt lock, sliding door pin lock, sliding door handle latch, and sliding door security bar that you have

16  Leave a radio or TV playing softly while you're gone

17  Close and latch your windows while you're gone, particularly when you're on vacation

18  Tell your roommate or spouse where you're going and when you'll be back.

19  Don't walk alone at night.  Don't allow your family to do so

20  Don't hide a key under the doormat or a nearby flowerpot.  These are the first places a burglar will look

21  Don't give entry keys, codes, or electronic gate cards to anyone

22  Use lamp timers when you go out in the evening or go away on vacation.  They can be purchased at most hardware stores

23  Let the manager and your friends know if you'll be gone for an extended time.  Ask your neighbor to watch your apartment since the management cannot assume that responsibility

24  While on vacation, temporarily stop your newspaper and mail delivery, or have your mail and newspaper picked up daily by a friend

25  Carry your door key in your hand, whether it is daylight or dark, when walking to your entry door.  You are most vulnerable when looking for your keys at the door

### PERSONAL SECURITY—WHILE USING YOUR CAR

26  Lock your car doors while driving.  Lock your car doors and roll up the windows when leaving your car parked

27  Don't leave exposed items in your car, such as cassette tapes, wrapped packages, briefcases, or purses

28  Don't leave your keys in the car

29  Carry your key ring in your hand whenever you are walking to your car—whether it is daylight or dark and whether you are at home, school, work, or on vacation

30  Always park in a well-lighted area if possible, try to park your car in an off-street parking area rather than on the street

31  Check the backseat before getting into your car

32  Be careful when stopping at gas stations or automatic-teller machines at night—or anytime when you suspect danger

### PERSONAL SECURITY AWARENESS

*No security system is failsafe.  Even the best system can't prevent crime.  Always act as if security systems don't exist since they are subject to malfunction, tampering, and human error.  We disclaim any express or implied warranties of security.  The best safety measures are the ones you perform as a matter of common sense and habit.*

## When Moving Out

37  **MOVE-OUT NOTICE.** Before moving out, you must give our representative advance written notice as provided below. Your move-out notice will not release you from liability for the full term of the Lease Contract or renewal period. You will still be liable for the entire Lease Contract term if you move out early (paragraph 22) except in the military clause (paragraph 23). YOUR MOVE-OUT NOTICE MUST COMPLY WITH EACH OF THE FOLLOWING:

- We must receive advance written notice of your move-out date. The number of days of the advance notice must be at least the number of days required in paragraph 3 or on special provisions, even if the Lease Contract has become a month-to-month lease. If a move-out notice is received on the first, it will suffice for a move-out on the last day of the month of intended move-out, provided that all other requirements below are met.

- The move-out date in your notice [check one] ☐ must be the last day of the month, or ☐ may be the exact day designated in your notice. If neither is checked, the second applies.

- Your move-out notice must be in writing. Oral move-out notice will not be accepted and will not terminate your Lease Contract.

- Your move-out date cannot be before the Lease Contract term or renewal period.

YOUR NOTICE IS NOT ACCEPTABLE IF IT DOES NOT COMPLY WITH ALL OF THE ABOVE. Please use our written move-out form. You must obtain from our copy tentative written acknowledgment. You must deliver your move-out notice. If we terminate the Lease Contract, we must give you the same advance notice—unless you are in default.

38  **MOVE-OUT PROCEDURES.** The move-out date can't be changed unless we and you both agree in writing. You won't move out before the Lease Contract term or renewal period is paid in full. Early move-out may result in reletting charges and acceleration of future rent under paragraphs 11 and 32. You're prohibited by law from applying any security deposit to rent. You won't stay beyond the date you are supposed to move out. All residents, guests, and occupants must surrender or abandon the apartment before the 30-day period for deposit refund begins. You must give us and the U.S. Postal Service, in writing, each resident's forwarding address.

39  **CLEANING.** You must thoroughly clean the apartment, including doors, windows, furniture, bathrooms, kitchen appliances, patios, balconies, garages, carports, and storage rooms. You must follow move-out cleaning instructions if they have been provided. If you don't clean adequately, you'll be liable for reasonable cleaning charges—including charges for cleaning carpets, draperies, furniture, walls, etc. that are soiled beyond normal wear (that is, wear or soiling that occurs without negligence, carelessness, accident, or abuse).

40  **MOVE-OUT INSPECTION.** You should meet with our representative for a move-out inspection. Our representative has no authority to bind or limit us regarding deductions for repairs, damages, or charges. Any statements or estimates by us or our representative are subject to our correction, modification, or disapproval before final refunding or accounting.

41  **SECURITY DEPOSIT DEDUCTIONS AND OTHER CHARGES.** You'll be liable for the following charges, if applicable: unpaid rent, unpaid utilities, unreimbursed service charges, repairs or damages caused by negligence, carelessness, accident, or abuse, including stickers, scratches, tears, burns, stains, or unapproved holes; replacement of or damage to appliances or smoke alarms; replacement cost of our property that was in or attached to the apartment and is missing; replacing dead or missing smoke-detector batteries at any time; utilities for repairs or cleaning, trips to let in company representatives to remove your telephone or TV cable services or rental items (if your exclusive access to areas were not provided), and you agree to return all the keys to the apartment; packing, removing, or storing property removed or stored by us; removing or replacing unauthorized locks or fixtures; removing illegally parked vehicles; special trips for trash removal caused by parked vehicles blocking dumpsters; false security alarm charges unless due to our negligence; animal-related charges under paragraphs 6 and 27; government fees or fines against us for violation (by you, your occupants, or guests) of local ordinances relating to smoke detectors, false alarms, recycling, or other matters; late payment and return of check charges; a charge (not to exceed $100) for our time and inconvenience in any lawful removal of an animal or in any valid eviction proceeding against you, plus attorney's fees, court costs, and filing fees actually paid, and other sums that we may be owed under the Lease Contract.

You'll be liable to us for (1) charges for replacing all keys and access devices referenced in paragraph 5 if you fail to return them even before your actual move-out date, (2) accelerated rent if you have violated paragraph 32, and (3) a reletting fee if you have violated paragraph 11.

42  **DEPOSIT RETURN, SURRENDER, AND ABANDONMENT.** We'll mail you your security deposit refund (less lawful deductions) and an itemized accounting of any deductions no later than 30 days after surrender or abandonment, unless statutes provide otherwise.

You have surrendered the apartment when (1) the move-out date has passed and no one is living in the apartment in our reasonable judgment; or (2) all apartment keys and access devices listed in paragraph 5 have been turned in where rent is paid—whichever date occurs first.

You have abandoned the apartment when all of the following have occurred: (1) everyone appears to have moved out in our reasonable judgment, (2) clothes, furniture, and personal belongings have been substantially removed in our reasonable judgment, (3) you've been in default for non-payment of rent for 5 consecutive days, or water, gas, or electric service for the apartment not connected in our name has been terminated, and (4) you've not responded for 2 days to our notice left on the inside of the main entry door, stating that we consider the apartment abandoned. An apartment is also "abandoned" 10 days after the death of a sole resident.

Surrender, abandonment, or judicial eviction ends your right to possession for all purposes and gives us the immediate right to clean up, make repairs in, and relet the apartment, determine any security deposit deductions, and remove property left in the apartment. Surrender, abandonment, and judicial eviction affect your rights to property left in the apartment (paragraph 13), but not your other obligations (paragraph 32).

## Signatures, Originals and Attachments

43  **ORIGINALS AND ATTACHMENTS.** This Lease Contract has been executed in multiple originals, each with original signatures—one for you and one or more for us. Our rules and community policies, if any, will be attached to the Lease Contract and given to you at signing. When an Inventory and Condition form is completed, both you and we should retain a copy. The items checked below are attached to this Lease Contract and are binding, even if not initialed or signed:

☐ Access Gate Addendum, dated _____
☐ Additional Special Provisions
☐ Animal Addendum
☐ Apt. Rules or Community Policies, dated _____
☐ Asbestos Addendum (if asbestos is present)
☐ Early Termination Addendum, dated _____
☐ Enclosed Garage, Carport or Storage Unit Addendum, dated _____
☐ Inventory & Condition Form
☐ Intrusion Alarm Addendum and Disclosure Addendum
☐ Lead Hazard Information and Disclosure Addendum
☐ Lease Contract Guaranty ( _____ guaranties, if more than one)
☐ Legal Description of Unit (if rental term longer than one year)
☐ Mold Information and Prevention Addendum
☐ Move-Out Cleaning Instructions, dated _____
☐ Notice of Intent to Move Out Form
☐ Parking Permit or Sticker (quantity _____)
☐ Repair or Service Request Form
☐ Satellite Dish or Antenna Addendum
☐ TCEQ Tenant Guide to Water Allocation
☐ Utility Allocation Addendum for: ☐ electricity ☐ water ☐ gas
   ☐ central-system costs ☐ trash removal
☐ Utility Submetering Addendum for: ☐ electricity ☐ water ☐ gas
☐ Other _____

*Name and address of locator service (if applicable)*

_____

_____

_____

**You are legally bound by this document. Please read it carefully.**

Before submitting a rental application or signing a Lease Contract, you may take a copy of these documents to review and/or consult an attorney.

Additional provisions or changes may be made in the Lease Contract if agreed to in writing by all parties.

You are entitled to receive an original of this Lease Contract after it is fully signed. Keep it in a safe place.

*Resident or Residents (all sign below)*

Nic Lopez

_____

*Owner or Owner's Representative (signing on behalf of owner)*

Angela G. DiLisi

*Address and phone number of owner's representative for notice purposes*

_____

_____

*Date form is filled out (same as on top of page 1)*

_____



09/01/2005

# RECEIPT OF RENT

Date:  09/01/2005
Apt. #: J104
Month of:  September 2005
Rent Applied To:  September 2005 for Apt. J104-Norma Lopez
Amount Paid:  $725.00

Thank-you,

Angela Espinoza
Property Manager

St. John's Day School encourages full coopera-
tion between parents and teachers to insure an
effective educational program. Parents are urged to
get acquainted with the teachers and to visit classes.
Conferences can be arranged through the school
office. The home and school must work together for
the good of each child.

Teacher's conference time: Tuesday 10:30



Signature of Parent

1st
2nd
3rd
4th

Norma is Promoted to 3rd Grade

# St. John's Episcopal Day School

2500 North Tenth
McAllen, Texas 78501

Report of

Norma Lopez

Grade Second
School Year 1997-1998



Sally Larson
Teacher

Karen Henderson
Director

## AREA OF LEARNING

| REPORTING PERIOD (9 weeks) | 1st | 2nd | Sem Av. | 3rd | 4th | Sem Av. | Yearly Av. |
|---|---|---|---|---|---|---|---|
| WHOLE LANGUAGE | | | | | | | |
| Oral Reading | S | S | S | S | S | S | S |
| Reading | 64 | 89 | 77 | 90 | 85 | 87 | 82 |
| Phonics | 84 | 88 | 86 | 92 | 80 | 86 | 86 |
| Spelling | 82 | 92 | 87 | 100 | 94 | 97 | 92 |
| English | 86 | 72 | 79 | 97 | 91 | 94 | 87 |
| HANDWRITING | E | E | E | E | E | E | E |
| MATH | 97 | 96 | 97 | 98 | 96 | 97 | 97 |
| SCIENCE | 90 | 95 | 92 | 92 | 92 | 94 | 93 |
| SOCIAL STUDIES | 73 | 92 | 83 | 96 | 90 | 93 | 88 |
| ART | | | | | | | |
| is learning essential skills | NA | NA | NA | S+ | S+ | S+ | S+ |
| is not disruptive in class | NA | NA | NA | S+ | S+ | S+ | S+ |
| SPANISH | | | | | | | |
| is learning essential skills | S | S | S+ | NA | NA | NA | S+ |
| is not disruptive in class | E | E | E | NA | NA | NA | S+ |
| PHYSICAL EDUCATION | | | | | | | |
| is learning essential skills | S | S | S | S | S | S | S |
| is not disruptive in class | E | E | E | E | E | E | E |
| MUSIC | | | | | | | |
| is learning essential skills | S | S | S | S | S | S | S |
| is not disruptive in class | S | S | S | S | S | S | S |
| COMPUTER | | | | | | | |
| is learning essential skills | E | E | E | E | E | E | E |
| is not disruptive in class | E | E | E | E | E | E | E |

| | 1st | 2nd | 3rd | 4th |
|---|---|---|---|---|
| Days Absent | 1 | 39 | 0 | 2 |
| Days Present | 43 | | 43 | 46 |
| Days Tardy | 0 | 0 | 0 | 0 |

N/A INDICATES AN AREA NOT BEING EVALUATED AT THIS TIME.

## AREA OF DEVELOPMENT

| REPORTING PERIOD (9 weeks) | 1 | 2 | 3 | 4 |
|---|---|---|---|---|
| WORK HABITS | | | | |
| 1. Completes class assignments on time | E | E | E | E |
| 2. Completes homework assignments on time | E | E | E | E |
| 3. Follows directions (oral and written) | E | E | E | E |
| 4. Listens attentively | E | E | E | E |
| 5. Uses time wisely | S | E | E | E |
| 6. Works independently | E | E | E | E |
| 7. Assumes responsibility | S | E | E | E |
| 8. Uses materials wisely | E | E | E | E |
| 9. Takes pride in appearance of work | E | E | E | E |
| 10. Works to the best of his/her ability | E | E | E | E |
| 11. Returns folders signed and corrected as requested | E | E | E | E |
| 12. Participates in class | E | E | E | E |
| REACTION TO PEERS | | | | |
| 1. Interested | S | E | E | E |
| 2. Works and plays well with others | E | E | E | E |
| 3. Demonstrates good sportsmanship | E | E | E | E |
| SOCIAL DEVELOPMENT | | | | |
| 1. Respects authority | E | E | E | E |
| 2. Respects school rules | E | E | E | E |
| 3. Accepts correction | E | E | E | E |
| 4. Shows self-control | E | E | E | E |
| 5. Self-confident | S | E | E | E |
| 6. Displays a good attitude | E | E | E | E |
| 7. Behaves appropriately in Chapel | E | E | E | E |
| CONDUCT | E | E | E | E |

## EXPLANATION OF GRADES AND SYMBOLS

E    90-100 Excellent
S    80-89 Satisfactory
NI   70-79 Needs Improvement
NP   Below 70 Not Passing
NA   Not Applicable

# St. John's Episcopal Day School

### 2500 North Tenth St.
### McAllen, Texas 78501
### 210-686-0231

Student _Norma Lopez_                          Promoted to: _____
Homeroom Teacher _Jenny Hollis_           Placed in: _____
School Year 19_98_ to 19_99_                    Retained In: _____
Director _Karen Henderson_
Parent's Signature:     1st _____
                                   2nd _____
                                   3rd _____
                                   4th _____

# St. John's Episcopal Day School

### 2500 North Tenth St.
### McAllen, Texas 78501
### 210-686-0231

Student _Norma Longoria_                      Promoted to: _4TH GR._
Homeroom Teacher _Jenny Hollis_           Placed in: _____
School Year 19_98_ to 19_99_                    Retained In: _____
Director _Karen Henderson_
Parent's Signature:     1st _____
                                   2nd _____
                                   3rd _____
                                   4th _____

# St. John's Episcopal Day School

### 2500 North Tenth St.
### McAllen, Texas 78501
### 210-686-0231

Student _Norma Lopez_                    Promoted to: _____

Homeroom Teacher _Jenny Hollis_          Placed in: _____

School Year 19_98_ to 19_99_             Retained in: _____

Director _Karen Henderson_

Parent's Signature:     1st _____

2nd _____

3rd _____

4th _____


# St. John's Episcopal Day School

### 2500 North Tenth St.
### McAllen, Texas 78501
### 210-686-0231

Student _Norma Longoria_                 Promoted to: _4TH GR._

Homeroom Teacher _Jenny Hollis_          Placed in: _____

School Year 19_98_ to 19_99_             Retained in: _____

Director _Karen Henderson_

Parent's Signature:     1st _____

2nd _____

3rd _____

4th _____

## St. John's Episcopal Day School

2500 North Tenth St.
McAllen, Texas 78501
210-686-0231

Student _Norma Lopez_      Promoted to: _____

Homeroom Teacher _Jenny Hollis_    Placed in: _____

School Year 19 _98_ to 19 _99_        Retained in: _____

Director _Karen Henderson_

Parent's Signature:    1st _____

                 2nd _____

                 3rd _____

                 4th _____


## St. John's Episcopal Day School

2500 North Tenth St.
McAllen, Texas 78501
210-686-0231

Student _Norma Lopez_      Promoted to: _____

Homeroom Teacher _Jenny Hollis_    Placed in: _____

School Year 19 _98_ to 19 _99_        Retained in: _____

Director _Karen Henderson_

Parent's Signature:    1st _____

                 2nd _____

                 3rd _____

                 4th _____

Teacher _Amy Lindersley_    Subject: Science

| | 1st | 2nd | Sem. AV | 3rd | 4th | Sem. AV | Yr. AV |
|---|---|---|---|---|---|---|---|
| Subject Grade | | | | | | | |
| Conduct Grade | | | | | | | |
| Days Absent | | | | | | | |
| Days Tardy | | | | | | | |
| Conference Requested | | | | | | | |

Evaluation Key

| A+ | 100-97 | C+ | 79-77 |
|---|---|---|---|
| A | 96-93 | C | 76-73 |
| A- | 92-90 | C- | 72-70 |
| B+ | 89-87 | D | 69-60 (Failing) |
| B | 86-83 | F | 64-61 (Failing) |
| B- | 82-80 | | 59-below (Failing) |
| NA | Not Applicable | S | Satisfactory |
| N | Needs Improvement | U | Unsatisfactory |

| | 1st | 2nd | 3rd | 4th |
|---|---|---|---|---|
| 1. Participates in experiments | S | | | |
| 2. Understand cause/effect | S | | | |
| 3. Uses science vocabulary | S | | | |
| 4. Completes assignments | S | | | |
| 5. Uses time wisely | S | | | |
| 6. Studies for tests | S | | | |
| 7. Is developing skills related to subject | S | | | |
| 8. Takes pride in work | S | | | |
| 9. Pays attention in class | S | | | |
| 10. Returns folders signed and corrected as requested | S | | | |
| 11. Contributes to class discussion | S | | | |

Teacher _____    Subject: Math

| | 1st | 2nd | Sem. AV | 3rd | 4th | Sem. AV | Yr. AV |
|---|---|---|---|---|---|---|---|
| Subject Grade | | | | | | | |
| Conduct Grade | | | | | | | |
| Days Absent | | | | | | | |
| Days Tardy | | | | | | | |
| Conference Requested | | | | | | | |

Evaluation Key

| A+ | 100-97 | C+ | 79-77 |
|---|---|---|---|
| A | 96-93 | C | 76-73 |
| A- | 92-90 | C- | 72-70 |
| B+ | 89-87 | D | 69-60 (Failing) |
| B | 86-83 | F | 64-61 (Failing) |
| B- | 82-80 | | 59-below (Failing) |
| NA | Not Applicable | S | Satisfactory |
| N | Needs Improvement | U | Unsatisfactory |

| | 1st | 2nd | 3rd | 4th |
|---|---|---|---|---|
| 1. Understands math concepts | | | | |
| 2. Has insight into math relationships | | | | |
| 3. Computes accurately: Addition/Subtraction | | | | |
| Multiplication/Division | | | | |
| Fractions | | | | |
| Decimal notation | | | | |
| Ratio/Percentage | | | | |
| 4. Reasons well in problem solving | | | | |
| 5. Uses time wisely | | | | |
| 6. Completes assignments | | | | |
| 7. Has notebook signed and corrected weekly | | | | |

## St. John's Episcopal Day School

2500 North Tenth St.
McAllen, Texas 78501
210-686-0231

Student _Norma Lopez_____    Promoted to: _____
Homeroom Teacher _Jenny Hollis_____    Placed in: ___ _____
School Year 19_98_ to 19_99_    Retained in: _____
Director _Karen Henderson_____
Parent's Signature:    1st _____
                       2nd _____
                       3rd _____
                       4th _____

## St. John's Episcopal Day School

2500 North Tenth St.
McAllen, Texas 78501
210-686-0231

Student _Norma Lopez_____    Promoted to: 4th _____
Homeroom Teacher _Jenny Hollis_____    Placed in: _____
School Year 19_98_ to 19_99_    Retained in: _____
Director _Karen Henderson_____
Parent's Signature:    1st _____
                       2nd _____
                       3rd _____
                       4th _____

Teacher _____ _____ Subject: Art, Spanish, Music, PE, Computer

| | 1st | 2nd | Sem. AV | 3rd | 4th | Sem. AV | Yr AV |
|---|---|---|---|---|---|---|---|
| Subject Grade | | | | | | | |
| Conduct Grade | | | | | | | |
| Days Absent | | | | | | | |
| Days Tardy | | | | | | | |
| Conference Requested | | | | | | | |

Evaluation Key

| | | | |
|---|---|---|---|
| A+ | 100-97 | C+ | 79-77 |
| A | 96-93 | C | 76-73 |
| A- | 92-90 | C- | 72-70 |
| B+ | 89-87 | D | 69-65  (Failing) |
| B | 86-83 | D- | 64-60  (Failing) |
| B- | 82-80 | F | 59 below  (Failing) |
| NA | Not Aplicable | S | Satisfactory |
| N | Needs Improvement | U | Unsatisfactory |

1. Is developing essential skills
2. Uses time wisely
3. Works cooperatively with others in a group
4. Is not disruptive in class
5. Follows directions
6. Respects school rules
7. Seeks help when needed
8. Pays attention

| 1st | 2nd | 3rd | 4th |
|---|---|---|---|
| S | | | |
| S | | | |
| S | | | |
| | | | |
| S | | | |
| S | | | |
| S | | | |
| S | | | |

Teacher Skalitsky     Subject: Art, Spanish, Music, PE, Computer

| | 1st | 2nd | Sem. AV | 3rd | 4th | Sem. AV | Yr AV |
|---|---|---|---|---|---|---|---|
| Subject Grade | S | S | S | S+ | S+ | S+ | S+ |
| Conduct Grade | S | S | S | S | S+ | S+ | S |
| Days Absent | | | | | | | |
| Days Tardy | | | | | | | |
| Conference Requested | | | | | | | |

Evaluation Key

| | | | |
|---|---|---|---|
| A+ | 100-97 | C+ | 79-77 |
| A | 96-93 | C | 76-73 |
| A- | 92-90 | C- | 72-70 |
| B+ | 89-87 | D | 69-65  (Failing) |
| B | 86-83 | D- | 64-60  (Failing) |
| B- | 82-80 | F | 59 below  (Failing) |
| NA | Not Aplicable | S | Satisfactory |
| N | Needs Improvement | U | Unsatisfactory |

1. Is developing essential skills
2. Uses time wisely
3. Works cooperatively with others in a group
4. Is not disruptive in class
5. Follows directions
6. Respects school rules
7. Seeks help when needed
8. Pays attention

| 1st | 2nd | 3rd | 4th |
|---|---|---|---|
| S | S | S | S+ |
| S | S | S | S+ |
| S | S | S | S+ |
| S | S | S | S+ |
| S | S | S | S+ |
| S | S | S | S+ |
| S | S | S | S+ |
| S | S | S | S+ |



St. John's Episcopal Day School

2500 North Tenth St.
McAllen, Texas 78501
210-686-0231

Student _Norma Lopez_____    Promoted to: _____
Homeroom Teacher _Jenny Hollis_____    Placed in: _____
School Year 1998_ to 1999_    Retained in: _____
Director _Karen Henderson_____
Parent's Signature:    1st _____
                       2nd _____
                       3rd _____
                       4th _____

St. John's Episcopal Day School

2500 North Tenth St.
McAllen, Texas 78501
210-686-0231

Student _Norma Lopez_____    Promoted to: _____
Homeroom Teacher _Jenny Hollis_____    Placed in: _____
School Year 1998_ to 1999_    Retained in: _____
Director _Karen Henderson_____
Parent's Signature:    1st _____
                       2nd _____
                       3rd _____
                       4th _____

Teacher _____    Subject: Art, Spanish, Music, PE, Computer

| | 1st | 2nd | Sem. AV | 3rd | 4th | Sem. AV | Yr. AV |
|---|---|---|---|---|---|---|---|
| Subject Grade | F | | | S+ | S | S+ | S |
| Conduct Grade | S | | | S+ | S+ | S+ | S+ |
| Days Absent | | | | | | | |
| Days Tardy | | | | | | | |
| Conference Requested | | | | | | | |

**Evaluation Key**

| | | | |
|---|---|---|---|
| A+ | 100-97 | C+ | 79-77 |
| A | 96-93 | C | 76-73 |
| A- | 92-90 | C- | 72-70 |
| B+ | 89-87 | D | 69-65  (Failing) |
| B | 86-83 | C | 64-60  (Failing) |
| B- | 82-80 | F | 59-below  (Failing) |
| NA | Not Applicable | S | Satisfactory |
| N | Needs Improvement | U | Unsatisfactory |

| | 1st | 2nd | 3rd | 4th |
|---|---|---|---|---|
| 1. Is developing essential skills | S+ | S+ | | |
| 2. Uses time wisely | S+ | S+ | | |
| 3. Works cooperatively with others in a group | S+ | S + | | |
| 4. Is not disruptive in class | S+ | S+ | | |
| 5. Follows directions | S+ | S+ | | |
| 6. Respects school rules | S+ | S+ | | |
| 7. Seeks help when needed | S+ | S+ | | |
| 8. Pays attention | S+ | S+ | | |

---

Teacher _____    Subject: Art, Spanish, Music, PE, Computer

| | 1st | 2nd | Sem. AV | 3rd | 4th | Sem. AV | Yr. AV |
|---|---|---|---|---|---|---|---|
| Subject Grade | S | | | | | | |
| Conduct Grade | E | | | | | | |
| Days Absent | C | | | | | | |
| Days Tardy | | | | | | | |
| Conference Requested | E-B | | | | | | |

**Evaluation Key**

| | | | |
|---|---|---|---|
| A+ | 100-97 | C+ | 79-77 |
| A | 96-93 | C | 76-73 |
| A- | 92-90 | C- | 72-70 |
| B+ | 89-87 | D | 69-65  (Failing) |
| B | 86-83 | C | 64-60  (Failing) |
| B- | 82-80 | F | 59-below  (Failing) |
| NA | Not Applicable | S | Satisfactory |
| N | Needs Improvement | U | Unsatisfactory |

| | 1st | 2nd | 3rd | 4th |
|---|---|---|---|---|
| 1. Is developing essential skills | E | | | |
| 2. Uses time wisely | E | | | |
| 3. Works cooperatively with others in a group | E | | | |
| 4. Is not disruptive in class | E | | | |
| 5. Follows directions | E | | | |
| 6. Respects school rules | E | | | |
| 7. Seeks help when needed | E | | | |
| 8. Pays attention | E | | | |

## St. John's Episcopal Day School

2500 North Tenth St.
McAllen, Texas 78501
210-686-0231

Student _Norma Lopez_                    Promoted to: ___ ___ ___ ___
Homeroom Teacher _Tricia Skalitsky_      Placed in: _____
School Year 19_99_ to _2000_             Retained in: _____
Director _Karen Henderson_
Parent's Signature:    1st _____
                       2nd _____
                       3rd _____
                       4th _____

## St. John's Episcopal Day School

2500 North Tenth St.
McAllen, Texas 78501
210-686-0231

Student _Norma Lopez_                    Promoted to: _5th_
Homeroom Teacher _Tricia Skalitsky_      Placed in: _____
School Year 19_99_ to _2000_             Retained in: _____
Director _Karen Henderson_
Parent's Signature:    1st _____
                       2nd _____
                       3rd _____
                       4th _____

Teacher _____  Subject: Science

|  | 1st | 2nd | Sem. AV | 3rd | 4th | Sem. AV | Yr. AV |
|---|---|---|---|---|---|---|---|
| Subject Grade |  | 92 | 92 | 95 |  |  |  |
| Conduct Grade |  | S | S | S |  |  |  |
| Days Absent |  |  |  |  |  |  |  |
| Days Tardy |  |  |  |  |  |  |  |
| Conference Requested |  |  |  |  |  |  |  |

Evaluation Key

| A+ | 100-97 | C+ | 79-77 |
| A | 96-93 | C | 76-73 |
| A- | 92-90 | C- | 72-70 |
| B+ | 89-87 | D+ | 69-66 (Failing) |
| B | 86-83 | D- | 64-60 (Failing) |
| B- | 82-80 | F | 59-below (Failing) |
| NA | Not Applicable | S | Satisfactory |
| N | Needs Improvement | U | Unsatisfactory |

|  | 1st | 2nd | 3rd | 4th |
|---|---|---|---|---|
| 1. Participates in experiments |  | S |  |  |
| 2. Understand cause/effect |  | S | S |  |
| 3. Uses science vocabulary |  | S | S |  |
| 4. Completes assignments |  | S | S |  |
| 5. Uses time wisely |  | S | S |  |
| 6. Studies for tests |  | S | S |  |
| 7. Is developing skills related to subject |  | S | S |  |
| 8. Takes pride in work |  | S | S |  |
| 9. Pays attention in class |  | S | S |  |
| 10. Returns folders signed and corrected as requested |  | S | S |  |
| 11. Contributes to class discussion |  | S | S |  |

Teacher _Melissa Cloniff_  Subject: English    *Norma 8.*

|  | 1st | 2nd | Sem. AV | 3rd | 4th | Sem. AV | Yr. AV |
|---|---|---|---|---|---|---|---|
| Subject Grade | 101 | 91 | 100 | 95 | 97 | 96 | 97 |
| Conduct Grade | S | S | S | S | S | S |  |
| Days Absent |  |  |  |  |  |  |  |
| Days Tardy |  |  |  |  |  |  |  |
| Conference Requested |  |  |  |  |  |  |  |

Evaluation Key

| A+ | 100-97 | C+ | 79-77 |
| A | 96-93 | C | 76-73 |
| A- | 92-90 | C- | 72-70 |
| B+ | 89-87 | D+ | 69-66 (Failing) |
| B | 86-83 | D- | 64-60 (Failing) |
| B- | 82-80 | F | 59-below (Failing) |
| NA | Not Applicable | S | Satisfactory |
| N | Needs Improvement | U | Unsatisfactory |

|  | 1st | 2nd | 3rd | 4th |
|---|---|---|---|---|
| 1. Uses correct grammar | S | S | S | S |
| 2. Uses punctuation | S | S | S | S |
| 3. Uses capitalization | S | S | S | S |
| 4. Shows clarity in expression | S | S | S | S |
| 5. Express ideas clearly in writing | S | S | S | S |
| 6. Completes assignments | S | S | S | S |
| 7. Uses time wisely | S | S | S | S |
| 8. Studies for tests | S | S | S | S |